## UNITED STATES DISTRICT COURT
## DISTRICT OF COLORADO

**FILED**
UNITED STATES DISTRICT COURT
DENVER, COLORADO

APR 15 2021

JEFFREY P. COLWELL
CLERK

**JAMES HARRISON MASSEY**

    **Plaintiff,**

**v.**

**COMPUTERSHARE LIMITED**
**COMPUTERSHARE US, INC**
**COMPUTERSHARE MORTGAGE SERVICES, INC**
**COMPUTERSHARE, INC**
**COMPUTERSHARE US SERVICES, INC**
**COMPUTERSHARE LOAN SERVICES**
**BANK OF AMERICA**
**SPECIALIZED LOAN SERVICING, LLC**

    **Defendants.**

**Civil Action**

**No. 21-CV-00601-WJM**

---

**PLAINTIFF'S RESPONSE AND OPPOSITION TO DEFENDANT SPECIALIZED
LOAN SERVICING, LLC'S MOTION FOR SHOW CAUSE ORDER, and
TO STAY PROCEEDINGS PENDING RESOLUTION OF SAME**

**NOW COMES, JAMES HARRISON MASSEY,** Plaintiff, Pro Se, and for his Response and

Objection to defendants' Motion for Show Cause Order and to Stay Proceedings Pending

Resolution of Same, states to this Honorable Court, and advises as follows:

### INTRODUCTION

This instant matter now before this Honorable Colorado District Court has, as its formative

roots, causes of action, grounded in the Western District of Kentucky where plaintiff filed his

original complaint in that U.S. District Court, in a matter captioned: James Harrison Massey,

Plaintiff, v. Specialized Loan Servicing, LLC, defendant, case No. 1:20-cv-00088-GNS.

In response to defendant, Specialized Loan Servicing, LLC's, Rule 12(b)(6) motion to dismiss, the Kentucky District Court dismissed plaintiff's complaint.

The Kentucky Court's Order dismissing plaintiff's complaint failed to specify "clearly and explicitly" that plaintiff's complaint was dismissed with prejudice.

For good and excusable reasons plaintiff did not appeal the Kentucky order dismissing the complaint and subsequently plaintiff filed this instant complaint in this District Court. *Reference; Cromwell v. County of Sac, 94 U.S. 351, 356 (1877)*

**PLAINTIFF'S ANALYSIS, and OPPOSITION STATEMENT**

**Res Judicata is Not Appropriate and Should Not Apply in This Case.**

The U.S. Sixth Circuit Kentucky Court's order dismissing plaintiff's complaint has no res judicata effect on this subsequent complaint that the plaintiff has now filed in this U.S. Tenth Circuit Court.

**Res Judicata effects are Intra-Judicial Circuit, and not Inter-Judicial Circuit**

Any opinion that may be handed down by the US District Court for the Western District of Kentucky, [sitting in the Sixth Federal Judicial Circuit], is not, in any way, binding on any US District Court for the District of Colorado, [sitting in the 10th Federal Judicial Circuit]. See *Nakai v. Pers. Prob. Officer, No 11-1139, 2012 WL 395896 (C.D. Cal. Feb. 6. 2012)*

**A Single District Court Decision is not Binding on Other District Courts.**

Generally, district court opinions are not binding on other district courts or on courts of appeal. "A single district court decision...has little precedential effect and is not binding on other district judges in the same district." See *United States v. Articles of Drug Consisting of 203 Paper Bags, 18 F. 2d 569, 572 (7th Cir. 1987); Colby v. J.C. Penney Co., 811 F.2d 1119, 1124*

*(7th Cir. 1987).*

### Res Judicata Decisions are Reviewed De Novo

The Kentucky Court decision is inherently flawed and was entered based upon judicial error that is clearly other than harmless error, therefore the Kentucky Court's order dismissing plaintiff's original complaint should not be relied upon to any degree, nor should this Colorado Court perpetuate the gross injustice resulting from the Kentucky Court's flawed decision

The res judicata effects of a prior judgment is a legal question, which [is] reviewed de novo. *Test Masters Educ. Servs., Inc. v. Singh, 428 F. 3d 559, 571 (5th Cir. 2005); DeVargas v. Montaya, 796 F.2d 1245, 1248 (10th Cir. 1986), see also comparatively, Thournir v. Meyer, 803 F. 2d 1093, 1094 (10th Cir. 1986); Carpenter v, Reed, 757 F.2d 218, 219 (10th Cir. 1985); Slayton v. Willingham 726 F.2d 631 (10th Cir. 1984).*

**Plaintiff's statement in opposition**

> ## RES JUDICATA SHOULD NOT BE ALLOWED
> ## TO SHIELD THE FRAUD AND THE CHEAT.

Claim preclusion implicates both "the weighty policies of judicial economy and fairness to parties." *United Mine Workers of Am. V. Gibbs, 383 U.S. 715, 724 (1966).* It encourages reliance on judicial decisions, bars vexatious litigation, and frees the courts to resolve other disputes." *Brown v. Felsen, 442 U.S. 127, 131 (1979)* However, claim preclusion "shields the fraud and the cheat as well as the honest person," and "therefore is to be involved only after careful inquiry." *Id. at 132.*

Plaintiff's complaint, as filed in the Kentucky District Court, sets forth a compelling, prima

facie case of Theft, Fraud and Deception, Extortion, Outrageous Conduct, on the part of defendant SLS, and therefore plaintiff's complaint should be allowed to proceed to judgment on the merits and not be dismissed prematurely pursuant to the effects of res judicata, based entirely on the basis of one district court's extremely harsh, flawed interpretation of the law, operative facts, and controlling authority, to include the provisions of the Uniform Commercial Code.

## Res Judicata - Definitions and Analysis

Res Judicata bars a subsequent action when the following four elements are present:

     i.   Both cases had the same parties;

The plaintiff's case filed in the Kentucky district court names as the sole defendant, Specialized Loan Servicing, LLC.

     ii.  A court of competent jurisdiction issued a judgment in the first case;

The Kentucky court's decision was grounded in significant part on a gross misunderstanding of the facts and startling misinterpretation of applicable law and controlling authority.

     iii. The first case was ended by way of a final judgment on the merits, and;

The final judgment by the district court does not provide a clear and explicit statement that the complaint is dismissed with prejudice.

     iv. Both cases dealt with the same claim or cause of action. See *Chavez-Mercado v.*

       *Barr, 946 F. 3d 272, 275 (5th Cir. 2020).*

There are causes of action , and defendants, set forth in the case now before this Colorado court that were not set forth in the complaint filed with the Kentucky district court.

## Burden of Proof Rests Entirely With The Defendant SLS in This Case.

The party asserting claim preclusion, in this instant case, defendant Specialized Loan

Servicing, LLC, bears the burden of proving all the elements for asserting res judicata, and, "that includes proving that a dismissal was with prejudice, and so can preclude claims now being brought before this Colorado court." *Taylor v. Sturgell, 553 U.S. 880, 907 (2008).*

## The district court's Final Judgment must have been entered on the merits

A dismissal with prejudice "operates as an adjudication on the merits", so it ordinarily precludes further claims. *Landon v. Hunt, 977 F. 2d 829, 832-33 (3rd Cir. 1992), Lawlor v. Nat'l Screen Serv. Corp., 349 U.S. 322, 3278 (1955).* **Conversely,** a "dismissal without prejudice is a dismissal that does not operate as an adjudication upon the merits. Rule 41 (a)(1), and thus does not have a claim preclusion effect. *Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 396 (1990).* [Parenthesis and quotation marks omitted]

## Clear-Statement Rule

Only a clear and explicit statement will suffice to make a dismissal involuntary, or involuntary with prejudice. *Choice Hotels International Incorporated v. Goodwin & Boone, 11 F. 3d 469 (4th Cir. (1993); Plumberman, Inc., v. Urban Sys. Dev. Corp., 605 F.2d 161, 162 (5th Cir. 1979).*

## Lack of Specificity Defeats Res Judicata

Where an earlier dismissal order does not otherwise specify, the dismissal is without prejudice, "Consequently it can have no res judicata effect." *McKenzie v. Davenport-Harris Funeral Home, 834 F. 2d 930, 934 (11th Cir. 1987).* [Emphasis provided] The Kentucky Court's order fails to state clearly and with specificity that plaintiff's complaint is dismissed with prejudice, therefore this Colorado Court should treat the order as dismissing the complaint without prejudice.

**Ambiguities in dismissal are construed against claim preclusion**

When there are uncertainties about what kind of dismissal the district court entered, the ambiguities are construed against claim preclusion **because a dismissal with prejudice *"is a severe and disfavored remedy" that is "only appropriate in limited circumstances.*** *"Alvin v. Suzuki, 227 F. 3d 107, 122 (3rd Cir. 2000); Emerson v. Thiel Coll., 296 F.3d 184, 190 (3rd Cir. 2002).* [Emphasis provided]

**Administrative Closure is not a dismissal**

Administrative closure merely clears a docket. But it is not a dismissal because courts retain jurisdiction and can reopen administratively closed cases. See *Papotto v. Hartford Life & Accident Ins. Co., 731 F. 3d 265, 275 (3rd Cir. 2013).* The Kentucky order has the appearance of being an administrative closure of plaintiff's case.

---

### Exceptions/Limits to Res Judicata.

---

**Events that postdate the Original complaint.** Res Judicata "generally does not bar claims that are predicated on events that postdate the filing of the initial complaint." *Whole Woman's Health v. Hellerstedt, 579 U.S.*

A significant number of the causes of action set forth in plaintiff's complaint now pending in this Colorado court postdate the filing of the initial complaint in the Kentucky district court, and are therefore not subject by res judicata.

**Continuing Wrong.** "Even if a court deems the underlying core of operative facts to be the same, a plaintiff in that circumstance is not precluded from enforcing its rights with respect to continuing wrongful conduct." *Moore, D. Coquillette, G. Joseph, G. Vairo, & C. Varner, Federal Practice Section 131.31 [1], p. 131-116 (3d ed. 2019); Lawlor v. National Screen*

*Service Corp., 349 U.S. 322, 327-328 (1955); Whole Woman's Health v. Hellerstedt, 579 U.S.*
*(2016) (slip Op., at 12)*

If a defendant engages in actionable conduct after a lawsuit is commenced, the plaintiff may

seek leave to file a supplemental pleading to assert a claim based on the subsequent conduct, *See*

*Fed. R. Civ. P. 15(c).* But he is not required to do so, and his election not to do so is not

penalized by application of res judicata to bar a later suit on that subsequent conduct.

**<u>Different conduct occurring at different times.</u>**  Events occurring after a plaintiff files

suit often give rise to new "operative facts" creating a new claim for relief. See; *Whole Woman's*

*Health, Supra.*

If a defendant engages in actionable conduct after a lawsuit is commenced, the plaintiff may

seek leave to file a supplemental pleading to assert a claim based on the subsequent conduct, *See*

*Fed. R. Civ. P. 15(c).* But he is not required to do so, and his election not to do so is not

penalized by application of res judicata to bar a later suit on that subsequent conduct.

**Analysis of how the district Court reached its decision to dismiss plaintiff's complaint**

---

**The Kentucky Court's Decision to Dismiss Plaintiff's Complaint is Significantly Flawed
in many respects, that include, a clearly Demonstrated Lack of a Basic Understanding of
the Operative Facts, and of Precedential, Legal and Other Authority, and also, the Unique
Characteristics of a cashier's check.**

---

**Allegations of Plaintiff's Complaint that were considered by the Kentucky district court:**

**THEFT** as an alleged cause of action.

> **"Massey acknowledges in his complaint, however, that SLS never cashed or negotiated the cashier's check, and further concedes the funds represented by the check were restored to his account by his own bank. Massey, therefore, fails to articulate an injury suffered "as a direct and proximate result [of any violation]"**

- The district court's analysis demonstrates a total lack of understanding of the unique characteristics of a cashier's check.
- The mere fact that SLS never cashed or negotiated the cashier's check [prior to the time when the plaintiff first filed his complaint in the district court], is absolutely of no moment whatsoever and should not have factored into the district court's decision in this case.

**Unique characteristics of a cashier's check**

- A cashier's check is entirely different than an ordinary personal check written on a personal checking account. If it is not clearly indicated on the face of the check it may indeed not have an expiration date.
- The particular cashier's check that plaintiff sent to SLS did not display an expiration date, and therefore, it could be kept, [secreted away], for an extended period of time, even in a desk drawer in any one of the many offices of SLS or its cohort associates, alter-egos, subsidiaries, dba's, etc., and then, be miraculously found, or discovered, brought to life no less valuable than it was at the time when it was initially received by SLS, and subsequently thereafter surreptitiously entered into an extended period of "premeditated" dormancy.
- The fact that the funds represented by the check were "restored" to plaintiff's account "by

his own bank", likewise is of no moment whatsoever. Pursuant to contractual agreement entered into between plaintiff and his bank, plaintiff remains indefinitely contingently obligated to the bank to repay the bank the full amount of the money that was "restored" to the plaintiff's account.

- SLS'S request that the plaintiff act foolishly and send a second check, whether a second check was, or was not sent, has no logical consequential connection what-so-ever with the theft of the first check

- Defendant SLS's behavior in this case strongly supports the reasonable assumption that the defendant was at all times fully aware of the unique characteristic of a cashier's check, which may help to explain why it suddenly became a requirement that plaintiff send a cashier's check to pay-off plaintiff's home equity line of credit, and also why SLS lied about receiving the cashier's check.

- The district court's decision that "Massey fails to articulate an injury suffered "as a direct and proximate result [of any violation], [A]ccordingly, Massey has failed to state a claim under KRS 446.070 for theft of his cashier's check", is beyond the boundaries of intelligent comprehension, and shines bright light on just how flawed, unfair and unjust this district court's decision actually is.

**FRAUD** as an alleged cause of action

**The district court's analysis**

"**Massey failed to allege that SLS dealt with the check as its own as proscribed by KRS 514.070, as it never cashed or negotiated the check. Finally, regarding KRS 517. 110, Massey merely stated "[a]ny use of the check, for any reason other than for the payoff of**

Page - 9

> plaintiff's [debt] amounted to a misapplication" but failed to allege SLS applied or disposed of his check as the original check was never negotiated. Accordingly, like Massey's theft claims, his fraud claim fails because SLS never "convert[ed] the check to [its] own personal use.", as it was never cashed or negotiated."

- See discussion of the immateriality of the fact that SLS did not cash nor negotiate the cashier's check. Id.

- The district court's totally flawed analysis with regard to the claim of fraud defies any rational explanation or response.

- It was not necessary that SLS cash or negotiate the cashier check in order for plaintiff to show fraud on the part of SLS.

- A cashier's check is treated the same as cash, and it floats through commerce the same as cash. *See; MidAmerica Bank, FSB v. Charter Bank FSB, supra.*

- The mere fact that SLS received the check under the pretense that it would be used to pay off plaintiff' home equity line of credit, and it was not used for that purpose, nor was it returned to plaintiff, and SLS exercised dominion and control over the check, thereby converting it to SLS'S own personal property, then lied about receiving the check, is sufficient to show fraud. It was not necessary that SLS cashed or negotiated the check for SLS to have committed a fraud.

**District court's analysis**

> "Rule 9 requires the plaintiff to plead the who, what, when, where, and how of the fraud"

- The requirements of "Rule 9" have been fully and adequately met by the plaintiff. The

Page - 10

irrefutable facts show that SLS committed actionable fraud that resulted in injury to the plaintiff, therefore, pursuant to "Rule 9" plaintiff is entitled to relief.

- For a more comprehensive discussion of "the who, what, where, when and how of the fraud" refer to plaintiff's Amended Complaint at pages 24-27, paragraphs 107 – 121.

**District court's analysis**

**"Where the party claiming to be defrauded did not believe what was told him by the other party or did not act upon it, he cannot recover", In the end, Massey refused to acquiesce to SLS's alleged "premeditated scheme". Accordingly, plaintiff's fraud claim is dismissed for failure to state a claim."**

- There is no amount of head-scratching that can assist in providing even a modicum of understanding of the district court's analysis of the facts and controlling authority in this regard.

- The district court's decision to dismiss plaintiff's complaint is far beyond the scope of simply being flawed, it is patently incomprehensible, demonstrates a total lack of understanding of the operative facts, ignores certain relevant facts, creates and substitutes the court's own personal rendition of operative facts, ignores or misinterprets legal precedent, ignores or misinterprets statutory authority, ignores or refuses to consider controlling authority such as the Uniform Commercial Code.

- This unbelievably harsh, flawed, unfair, and defective district court decision should not be allowed to operate as either res judicata, or as collateral estoppel, with regard to the plaintiff's complaint that is now pending before this Honorable Colorado District Court.

**EXTORTION** as an alleged cause of action

**District court's analysis**

> **"Massey's claim that Defendant threatened wrongful credit reporting, however,**
>
> **fails to satisfy the crime of extortion. The facts in [the] complaint do not allege a threat that**
>
> **falls within the enumerated threats prohibited under Kentucky extortion law." At most,**
>
> **Massey alleges SLS threatened a breach of contract by failing to honor his original check,**
>
> **and then allowing his debt to accrue. The commentary to KRS 514.080 explicitly excludes**
>
> **threatened breaches of contract however. Accordingly, Massey has failed to state an**
>
> **extortion claim under any theory."**

- The crime of extortion is committed when, in order to induce another person to do something against his or her will, or, to refrain from performing a lawful act, or, to give money to the person demanding the money, or anything else of value, or, make a substantial threat against another person to cause economic hardship, cause that person to suffer bodily or mental harm, or damage that that person's property, or reputation, and the person threatens such consequences by: performing or causing an unlawful act to be performed, or involving action by a third person, whose interests are not substantially related to the person making the threat or to that person's interest. *See; United States v. Hooks, 2005, U.S. Dist. (W.D. Tenn. Dec. 12, 2005); People v. Oppenheimer, 209 Cal. App. 2d 413 (Cal. App. 2d Dist. 1962); State v. Taylor, 30 Wn. App. 89 (Wash. Ct. App. 1981).*

- The district court goes so far as to try and redefine the threatening, extortionist acts by SLS as being "AT MOST", a breach of contract.

- Nowhere in plaintiff's complaint that he filed in the district court is there any mention

whatsoever of a cause of action for "breach of contract".

- The district court is bound by law to reach its decision based on the actual facts of the case, and may not simply make up an outlandish "alternative story" in order to advance his/her personal agenda.

- This feral district court decision should not be perpetuated by approval of this Honorable Colorado Court, and thereby allowed to become precedent that may be used in future cases to reach the same or similar totally, unfair and unjust result.

**INTENTIONALLY LIED v. MISTAKENLY LOST** the cashier's check.

**District court's analysis**

**"To the extent Massey seeks to infer SLS threatened to steal the check to extort him out of more debt, he must allege SLS intentionally lied about losing the check rather than mistakenly lost it."**

- The undisputed facts show that on August 27, 2019, plaintiff placed a cashier's check in the U.S. Mail, postage pre-paid, certified, addressed to Specialized Loan Servicing, LLC, 8742 Lucent Blvd, Suite 300, Highlands Ranch, Colorado 80129

- U.S. Postal service documents show that the cashier's check was delivered to SLS on August 30, 2019, at 10:49am, and was received and signed for by an SLS representative. These are facts that are not disputed, denied or questioned in any manner by SLS, but rather are facts that are admitted by SLS.

- During a telephone conversation with an SLS representative on September 17, 2019, while not having time for lapse of memory to have occurred, speaking on behalf of SLS, and at

the direction of SLS, the representative knowingly, and intentionally lied to plaintiff and told the

plaintiff that the cashier's check had not been received. There is nothing to indicate or to suggest

that the representative was in any way mistaken about what was being told to the plaintiff about

the status of the check, and the intent of what was being said.

**Disagreement with district court's analysis re an "accidental lie"**

- The district court's indication that SLS may have accidently, or mistakenly lied about

receiving the check is beyond the pale of common-sense belief and acceptance.

- The is no such thing as an "accidental lie", and, a lie cannot, under any circumstances or

in any manner, be told by mistake. A lie is a lie and is destined to remain a lie in infinity from the

moment it is uttered, even though, for reasons unknown, a district court may choose to ignore the

facts and the circumstances, and call a lie an accident or a mistake.

- A lie remains a lie even though it may be manipulated, scrubbed, and then cloaked in the

judicial garb of an accident or innocent mistake, it is still a lie.

- A significant amount of the court's discussions on page 10 of 13, Page ID # 263, are

essentially misrepresentations of fact, and, in no significant way truly reflect the facts in this

case.

**District court's analysis**

> **"Massey's claim that SLS threatened him for a second check fails, like those above, because**
> **he did not send a second check, and therefore, was not deprived of his property."**

- Once made, the threat stands alone on its own, and is in no way dependent upon whether

Page - 14

plaintiff did or did not acquiesce to the threat. To say that a threat is not a threat unless the plaintiff actually surrendered to the threat, capitulated to SLS'S demands and sent a second cashier's check is in every respect nothing less than an absolute absurdity.

- To say that plaintiff was not deprived of the first cashier's check that SLS "stole", "lost", "embezzled", "misappropriated", or other, because plaintiff did not surrender to SLS'S threats and demands that he send a second cashier's check, defies logic.

**District court's analysis**
**At page 10 of 13, Page ID# 263, footnote 11, line 5**

> **"Massey ultimately alleges, however, SLS agreed to honor the original pay off date, adjust his credit score, and cancel any debt as a result of its mistake".**

- SLS proposed that if the plaintiff would agree to send a second cashier's check SLS would honor the original pay off date, thereby making the amount of the second cashier's check the same amount as the first check, [$25, 849.76], meaning, that the plaintiff would then have sent SLS the total amount of $51,699.58, to pay off a home equity line of credit with a pay off balance of $25,849.76, and, with absolutely no guarantee what so ever that the second cashier's check would not meet with the exact same "mysterious fate" as the first cashier's check. Once is making a mistake, twice is being a fool.

**District court's analysis**
**At page 10 of 13, Page ID# 263, footnote 11, line 1.**

> **"To the extent Massey seeks to infer SLS threatened to steal the check to extort him out of more debt, he must allege SLS intentionally lied about losing the check, rather than mistakenly lost it."**

**A lie is universally described as follows, or in similar terms:** a false statement made with deliberate intent to deceive; an intentional untruth; a falsehood; something intended or serving to convey a false impression; an inaccurate or false statement.

**There is no such thing as an "unintentional lie", all lies are intentional.**

- In theory, that is not supported in any way by the facts of this case, and which plaintiff does not endorse in any manner, SLS could have <u>"mistakenly lost"</u> the cashier's check, however, it is not possible that SLS <u>"unintentionally lied"</u> about receiving the cashier's check.

- A lie and a mistake may co-exist and yet remain completely independent of each other.

- In theory, the basis of which is neither suggested nor supported in any way by the facts of this case, SLS could have "mistakenly lost" the cashier's check, and then, for whatever unknown reason, lied about the fact that it had lost the check.

- Conversely, it is not possible that SLS knowingly received the cashier's check [as shown by the facts], and then <u>"unintentionally lied"</u> about receiving the check.

- A lie is always an intentional act that may however, also co-exist with an act that has been done or committed unintentionally or by mistake.

- There is no dependency relationship between SLS'S alleged "mistakenly losing" the check, and SLS telling a lie about receiving the check. It is theoretically possible, [though highly improbable based on the facts], that SLS could have actually lost the check, and, also, at the same time, lied about receiving the check.

---

**It was Financially Rewarding for SLS to lie about receiving the cashier's check**

---

- The operative facts of this case strongly suggest, and also support the reasonable inference that SLS was incentivized to lie about receiving the check by the prospect of financial

gain by increasing its profit margin by running up plaintiff's debt, and forcing plaintiff to pay more to pay off his home equity line of credit, and, also providing an opportunity for SLS to collect double the amount of money owed to pay off plaintiff's account, by "forcing", "extorting", "pressuring", "convincing" plaintiff to send a second cashier's check in the amount of $25,849.76.

• SLS'S unenviable, long-running reputation for dishonesty and deceitfulness, [multiple law suits, hundreds of recorded victim complaints, etc.], when considered in light of the facts of this case, bring that compellingly strong, reasonable inference, more into the light of reality, rather than vitriolic speculation.

• If, after refusing to sign an indemnification agreement, and, also refusing to provide the bank with a statement of loss, [supported by the facts], SLS had then been successful in its attempts to force or convince plaintiff to send a second cashier's check, SLS would then have been in a position to have "miraculously discovered" the hiding place of the aforementioned wayward, "lost" first cashier's check, retrieve it from its hiding place, present it to plaintiff's bank and demand payment for the face value of the check, which he would have received. See; *MidAmerica Bank, FSB v. Charter One Bank, FSB, 232 Ill 2d. 560, 905 N.E. 2d 839, (2009).*

• A bank cannot unilaterally assert a defense the purchaser has against the payee of a cashier's check. See also; *Uniform Commercial Code Section 3.305(c);*

• Because of the extended life of a cashier's check, [ multiple years], SLS would not have been under pressure of time constraints to finalize the commission of its premeditated scheme of thievery and deception.

• SLS'S claim that it lost or misplaced the cashier's check after it was received is far

Page - 17

beyond the pale of being credible, defies believability, and immediately brings into focus the question, how could the cashier's check have possibly been "lost" within the confines of a highly "restricted access" office space, and could never be found. Reasonable minds, [a jury] would surely question the credibility of such a scenario.

- In light of SLS'S abysmal, wide-ranging, and long-standing reputation for dishonesty and deception, preponderating evidence would more likely than not  convince reasonable minds that SLS'S claim that it lost or misplaced the cashier's check, and could not ever find it, to be nothing more than a ruse, and a preamble to SLS'S premeditated, deceptive plan and scheme to secret the check away, wait until the statute of limitations had run for plaintiff to file a complaint, and then fortuitously find the long-lost wayward check, cause the check to be presented at plaintiff's bank with a demand for payment, or, alternatively, transfer/negotiate the check, for value, to a holder in due course with no knowledge of the shady history of the check. There may be other possible options available to SLS.

- The above scenario is far more than just mere speculation, but rather, based upon the overwhelming weight of compelling, irrefutable facts in this case, that scenario seems more akin to a reasonable assumption that reasonable minds may very well find to be credible and convincing by a preponderance of the evidence.

**If the cashier's check was indeed "lost, and could not be found," why then did SLS refuse to sign an Indemnity Agreement or Declaration of Loss, which would have allowed the bank to issue SLS a replacement check.  See UCC 3-312**

- Signing, or providing the requested documents would not have fit into SLS'S

Page - 18

premeditated scheme of deception and "illegal profit enhancing."

- By signing, and/or providing the documents, and thereby receiving a replacement cashier's check from the bank, plaintiff's home equity line of credit would have then been properly noted as paid off and SLS would not have been able to extort any additional money from plaintiff by falsely claiming that the account remained active and delinquent.

- Additionally, SLS would not have had the same opportunity to double its profits by "fortuitously", and "miraculously" locating the first cashier's check and presenting it for payment.

- Pursuant to the provisions of UCC Section 3-312, "Delivery of a declaration of loss is a warranty of the truth of the statements made in the declaration."

- SLS would have been placed in a position to either lie on the declaration of loss, or tell the truth and bring to a premature end its premeditated scheme of deception.

SLS'S refusal to sign or provide the required documents is presumptive of the untruthfulness of SLS'S claim that the cashier's check was lost and could not be found.

- The case law cited by the district court falls far short of being either comparably analogous or persuasive.  The facts of this case clearly support plaintiff's claim that SLS committed theft of plaintiff's cashier's check.

**Contractual agreement between plaintiff and his bank**

- On June 16, 2020, plaintiff entered into a contractual arrangement with South Central Bank of Bowling Green, Kentucky, [the obligated bank of the cashier's check], whereas, pursuant to the specific terms and conditions of that agreement, the bank "transferred" to plaintiff's personal account, the amount of the cost of the cashier's check that plaintiff had

Page - 19

previously sent to SLS.

- The details of the arrangement between the plaintiff and the bank called for the bank to "stop pay", ["refusal to pay"], the cashier's check should it subsequently be presented and a demand for payment be made by the person presenting the check.

- The bank's refusal to pay would expose the bank to substantial liability, therefore the bank required that the plaintiff agree to indemnify the bank against such potential liability.

*See UCC Section 3-411.*

- A bank's refusal to pay a cashier's check is not the same as a "stop pay" on a personal check, and therefore, it was other than harmless error for the district court to fail to recognize, understand, appreciate or take into consideration the significance of that difference when deciding to dismiss plaintiff's complaint.

- The district court's discussion of plaintiff's cause of action based on theft of the plaintiff's cashier's check, [beginning at page 5 through page 13 of the court's discussion], and also the court's decision as expressed at the conclusion of that discussion, [at page 7], is clear, convincing, and persuasive evidence of the court's lack of understanding of the matter, and/or, a failure on the part of the Court to properly take into account and consider as relevant, a) the nature of the irrefutable facts, b) the relevant and controlling provisions of the Uniform Commercial Code, c) the unique characteristics of a cashier's check, which include, stopping pay on a cashier's check, and the ramifications associated therewith.

- Based upon the incontrovertible and corroborated facts of this case, the district court's decision that the plaintiff failed "to articulate any injury suffered as a direct and proximate result" of the actions of SLS, and, accordingly, plaintiff failed to state a claim …for theft of his

cashier's check, defies credulity, and runs counter to any and all known case law precedent, statutory provisions, or other controlling authority. See *United States v. Articles of Drug Consisting of 203 Paper Bags, 18 F. 2d 569, 572 (7th Cir. 1987; Colby v. J.C. Penny Co., 811 F.2d 1119, 1124 (7th Cir. 1987)*

> **The district court's dismissal of plaintiff's complaint pursuant to SLS's 12(b)(6) motion to dismiss was not justified, it was the result of other than harmless error on the part of the court, and therefore cannot create grounds upon which res judicata can apply**

Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the form and sufficiency of a statement of a claim under the liberalized pleading rule, which allows a plaintiff to set forth a claim in a short and plain statement.

- Fed.R.Civ.P.8, provides that a statement of a claim must be "simple, concise and direct, as positive, precise, and succinct as possible."

- The primary object of the law is to obtain a decision on the merits of any claim, a claim should be tried substantially on the merits rather than technically on the pleadings" *Rennie & Laughlin, Inc., v. Chrysler Corp., 242 F, 2d 208, 213 (9th Cir. 1957.*

- The district court's decision to summarily deprive the plaintiff of the opportunity to participate in discovery, and also to lose his right to have a jury of reasonable minded people [plaintiff requested a jury trial], decide the credibility of his complaint based on the merits, is a harsh and unfair decision, being made even more harsh and unfair due to the fact that it is based primarily upon the district court's apparent lack of understanding of the facts, applicable law,

and other controlling authority, [provisions of the Uniform Commercial Code].

- The district court's Memorandum and Opinion points to instances where, in the belief of the court, plaintiff failed to articulate his claim in the manner satisfactory to the court. Rule 12(b)(6) addresses itself solely to a failure to state a claim and is not designed to correct inartistic pleading or to force compliance with the Federal Rules.

- Issue narrowing, fact development and guidance, and screening of sham or insufficient claims or defenses are accomplished by discovery, pretrial conference, other screening motions, and devices other than by 12(b)(6) motion to dismiss.

- While the district court treated plaintiff's complaint as doing nothing more than bringing a hint of a claim, however, had the court properly availed itself of an opportunity to garner a more comprehensive understanding of the operative facts, the law, and prevailing authority, it would then have become clear to the court that plaintiff's complaint did in fact plead, and give full notice of all material factual particulars.

- One of the general purposes for Rule 12(b)(6) ruling is to resolve or screen out some unmeritorious cases at the pleading stage, and not to simply provide a mechanism by which a financially powerful defendant can avoid liability, or to punish a less powerful plaintiff whose particular demographics may be disfavored by the court. The same standard for granting or denying a 12(b)(6) motion should apply in every situation regardless of the parties involved.

- The Supreme Court has stated that the 12(b)(6) motion must not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief" *Conley v. Gibson 355 U.S. 41 (1957)*

- The indisputable required facts of this case that were alleged and set forth with

particularity in plaintiff's initial complaint, could have been, and should have been supplemented by such reasonable inferences as may be drawn in plaintiff's favor, which would have boded decisively against the district court's dismissal of plaintiff's complaint. *See Cruz v. Beto, 405 U.S. 319, 322 (1972).*

- To have survived SLS'S motion to dismiss, plaintiff's complaint needed only to assert a plausible claim, and set forth sufficient factual allegations to support the claim. *Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949-1950, 173 L.Ed. 2d 868 (2009)*

- The district court's decision to grant SLS'S 12(b)(6) motion to dismiss is completely unsupported by the law, is completely unsupported by the facts, is completely unsupported by precedent, and other controlling authority, and clearly demonstrates the court's penchant to subject a disfavored plaintiff to harsh and unfair treatment, and also to deprive the plaintiff of his Seventh Amendment right to have his case decided by a fair and unbiased jury.

- The district court's tortured analysis of plaintiff's complaint is a text-book example of the effects of judicial bias and abuse of discretion, and raises the question whether the plaintiff has received fair and impartial treatment, and also, more importantly, what role, if any, did demographics or other such constitutionally protected factors play in motivating the court to reach such a shockingly flawed and unfair decision.

- The court's shallow and flawed interpretation of the facts and controlling authority of this case fails to take into account the very nature and unique characteristics of a cashier's check, as opposed to a personal check, thereby enabling court to reach a decision that runs directly counter to any logical reasoning, finds no support in law, unfairly deprives the plaintiff of his right to have his claims fairly and competently adjudicated on the merits, and serves only to cause the

Page -23

plaintiff to needlessly and unfairly continue to suffer additional and irreparable harm and loss, and also, and more significantly, allows this deceitful and dishonest defendant to continue unabated in the perpetuation of its unlawful and egregious behavior.

**It was essential for the district court to have considered the following:**

Regardless what may have been the final disposition of the cashier's check, whether it was lost, stolen, or misplaced, after it was received by SLS, full and total responsibility for the cashier's check, including risk of loss, passed unconditionally, and irreversibly to, and rested squarely with SLS alone, as of August, 30, 2019, at 10:49 am. See *Uniform Commercial Code, Section 2-509 Risk of Loss in the Absence of Breach,* **therefore, as of August 30, 2019, at 10:49 am, plaintiff's home equity line of credit was paid off and was no longer an active account, and therefore SLS'S extortionist actions after August 30, 2019, at 10:49 am, were in all respects "outrageous", reprehensible, wanton, illegal, and intolerable.**

a. Neither the plaintiff nor the plaintiff's bank could have effectively placed a stop pay on the cashier's check *Uniform Commercial Code Section 3-411; MidAmerica Bank, v. Charter Bank, Supra.*

b. Plaintiff's bank stood ready and willing to issue SLS a replacement cashier's check, however, SLS deliberately made the decision to refuse to cooperate with the bank's requirements, pursuant to UCC Section 3-312, to sign an indemnification agreement, and/or, to provide the bank with a statement of loss, both of which the bank would have relied upon and would have issued SLS a replacement cashier's check in the amount of the check SLS claimed to have lost.

c. The weight of operative facts in their entirety point to the reasonable inference that SLS lied about receiving the cashier's check, whereas, SLS has not offered any facts, or information of any kind that would tend to support SLS'S hollow, and totally unbelievable claim that the check was "accidently lost" due to "sloppy business practices" as categorized by the district court in its flawed analysis. Even if so, how could the district court decide that plaintiff should pay the price for SLS'S "sloppy business practices."

**WHEREFORE,** based upon the foregoing, this Colorado district court should not follow the decision of the Kentucky district court, and res judicata should not apply as to the plaintiff's complaint presently pending before this court. See: *Anderson v. City of Bessemer City, N.C. 470 U.S. 564, 1055 S.Ct. 1504, 84 L.ED. 2d 518 (1985), and,*

**PLAINTIFF FURTHER REQUESTS** that this Honorable Court find the contents of this document sufficient to Show Cause why neither res judicata nor collateral estoppel should apply with regard to plaintiff's complaint that is presently under review by this Colorado District Court,

**AND FURTHER,** that defendant's Motion be denied.

Respectfully submitted this 14th of April, 2021.

James Harrison Massey, Pro Se
440 Claypool Boyce Road
Alvaton, KY 42122
Telephone: 270-791-3528
jimmassey.pi.atty@gmail.com

James H. Massey
440 Claypool Boyce Road
Alvaton, KY 42122

April 14, 2021

Clerk of the Court
United States District Court
901 19th Street
Denver, CO 80294

    **RE: Civil Action No.: 21-CV-00601-WJM**

Dear Clerk of the Court:

Enclosed for filing please find **Plaintiff's Response and Opposition To Defendant Specialized Loan Servicing, LLC'S Motion For Show Cause Order, and To Stay Proceedings Pending Resolution Of Same, Motion To Strike Notice Of Related Case** and 2 (two) **Orders**. Also enclosed is a courtesy copy of an opinion from the Illinois Supreme Court for the Judge to review, if he so wishes.

If you should have any questions, please do not hesitate to contact me. Thank you.

Sincerely,

James H. Massey

JHM/tsm
Enclosure(s)
Cc: File

**RECEIVED**
UNITED STATES DISTRICT COURT
DENVER, COLORADO

**APR 15 2021**

JEFFREY P. COLWELL
CLERK





- To reuse, cover or mark through any previous shipping information.

Part # 156297-435 RRDB EXP 08/21

ORIGIN ID:BWGA   (270) 791-3528

MASSEY,JAMES HARRISON-ATTY LAW
440 CLAYPOOL BOYCE RD

ALVATON, KY 42122
UNITED STATES US

TO  CLERK OF COURT
US DISTRICT COURT FOR DIST OF CO
901 19TH ST

DENVER CO 80294
(303) 844-3433

SHIP DATE: 14APR21
ACTWGT: 0.95 LB
CAD: 6990566/SSF02201

BILL THIRD PARTY

FedEx
Express

THU — 15 APR 10:30A
PRIORITY OVERNIGHT

XH DENA

TRK# 7859 9109 3690

316

1
10:30 A
3690
04 15

DEN  CO-US

80294
DEN

Reusable

RECEIVED
UNITED STATES DISTRICT COURT
DENVER, COLORADO

APR 15 2021

JEFFREY P. COLWELL
CLERK