IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 21-cv-0601-WJM-SKC

JAMES HARRISON MASSEY,

    Plaintiff,

v.

COMPUTERSHARE LIMITED,
COMPUTERSHARE US, INC.,
COMPUTERSHARE MORTGAGE SERVICES, INC.,
COMPUTERSHARE, INC.,
COMPUTERSHARE US SERVICES, INC.,
COMPUTERSHARE LOAN SERVICES,
BANK OF AMERICA, and
SPECIALIZED LOAN SERVICING, LLC,

    Defendants.

## ORDER ON PENDING MOTIONS

This case is before the Court on the following pending motions:

1.     Defendant Specialized Loan Servicing LLC's ("SLS") Motion for Show Cause Order and To Stay Proceedings Pending Resolution of Same ("Motion for Show Cause Order") (ECF No. 14), *pro se* Plaintiff James Harrison Massey's Combined Amended Response to [SLS's Motion for Show Cause Order] and Compliance With the Court's Order to Show Cause Why This Litigation Should not Be Dismissed On Grounds of Res Judicata (ECF No. 41), and SLS's reply (ECF No. 46); and Defendant

        Bank of America, N.A.'s[1] ("Bank of America") Joinder to [SLS]'s [Motion for Show Cause Order] (ECF No. 22);

2. Massey's Motion to Strike Notice of Related Case (ECF No. 24), which SLS addressed in a footnote in its reply in connection with the Motion for Show Cause Order (ECF No. 46 at 2 n.2);

3. Massey's Motion for Entry of Default Judgement [Against Defendant Computershare Loan Services] (ECF No. 27), Computershare Loan Services's response (ECF No. 30), and Massey's reply (ECF No. 45);

4. Computershare Loan Services's Motion to Vacate and Set Aside Clerk's Entry of Default (ECF No. 31), and Massey's response (ECF No. 39);

5. Massey's Motion For Entry of Default Judgment [Against Bank of America] (ECF No. 36), to which no response was filed; and

6. Massey's Motion for Clarification of the Court's Orders staying Proceedings (ECF No. 44), and SLS's response (ECF No. 47).

For the following reasons, SLS's Motion for Show Cause Order is granted in part and denied in part, the remainder of the motions are stricken because they violate the Court's stay order, and the Clerk's Entry of Default against Computershare Loan Services is vacated.

---

[1] Massey named "Bank of America" as a defendant. (ECF No. 18.) However, in its Joinder to SLS's Motion for Show Cause Order, Bank of America refers to itself as "Bank of America, N.A." (ECF No. 22.)

# I. BACKGROUND

## A. Kentucky Action[2]

On May 12, 2020, Massey, proceeding *pro se*, filed the Kentucky Action against one defendant, SLS, which is also a defendant in the action before this Court ("Colorado Action"). In the Kentucky Action, Massey alleged that on July 15, 2019, he learned that SLS had become the service provider for his home equity line of credit, originally held by Bank of America. *See Massey v. Specialized Loan Servicing, LLC*, 2021 WL 311868, at *1 (W.D. Ky. Jan. 29, 2021). (Kentucky Action ¶ 2; Colorado Action ¶ 54.) Suspicious of SLS and believing them to be unreputable, Massey requested a payoff statement on August 22, 2019, to terminate his debt. *Id.* (Kentucky Action ¶¶ 3–4; Colorado Action ¶¶ 55–59.)

On August 27, 2019 Massey allegedly sent through certified mail a cashier's check for $25,849.76 in satisfaction of the statement amount. *Id.* (Kentucky Action ¶ 7; Colorado Action ¶ 62.) He received confirmation that his letter was received at the address listed on SLS's payoff statement on August 30, 2019. *Id.* (Kentucky Action ¶ 8; Colorado Action ¶ 65.)

The next day, Massey received a statement from SLS indicating an amount due

---

[2] For the purposes of judicial efficiency, the Court has in large part quoted verbatim the Statement of Facts section of Chief Judge Greg N. Stivers's Order, which sets forth the alleged facts in *James Harrison Massey v. Specialized Loan Servicing LLC*, No. 1:20-cv-00088-GNS-HBB ("Kentucky Action"). *See Massey v. Specialized Loan Servicing, LLC*, 2021 WL 311868, at *1–2 (W.D. Ky. Jan. 29, 2021).

Additionally, to demonstrate the virtually identical nature of the allegations in the Kentucky Action and the Colorado Action, and to avoid duplicative background sections, the Court has cited the paragraphs of the operative complaints in each action that contain similar allegations. For example, the Court cites: (Kentucky Action ¶ [number]; Colorado Action ¶ [number]. Although some of the allegations have been changed in the Colorado Action, the allegations are nearly the same and arise out of the same transaction as the allegations of the Kentucky Action.

on his account, which prompted Massey to contact SLS and inquire into the status of his check. *Id.* (Kentucky Action ¶¶ 9–10; Colorado Action ¶¶ 66–67.) On September 17, Massey spoke to an employee at SLS about his check, and he was told the mail room would search for it. *Id.* (Kentucky Action ¶ 10; Colorado Action ¶¶ 67–68.) In the Colorado Action, Massey alleges that SLS told him that the check had not been received, and thus, his home equity line of credit account remained active and delinquent. (Colorado Action ¶ 69.) On September 23, 2019, Massey called his bank, which informed him the check had not been negotiated or cashed. *Id.* (Kentucky Action ¶ 11.) Massey then called an SLS employee who explained that the mail room was still conducting a search for the check, and that he would receive a return call the next day. *Id.* (Kentucky Action ¶ 11.) After not receiving a return call, Massey called SLS on September 24 and spoke with an employee named "Ecedro", who was allegedly "unhelpful, wily, shifty, evasive, [and] rude." *Id.* (Kentucky Action ¶¶ 11–12; Colorado Action ¶¶ 72–73.)

After previous unsuccessful attempts to contact Massey, on November 14, 2019, SLS called him to explain that although they received his proof of the delivery in October, they still could not locate his check. *Id.* (Kentucky Action ¶ 24; Colorado Action ¶ 80.) On December 20, 2019, SLS mailed Massey a letter memorializing the November 14 phone conversation, indicating it had requested he acquire a "stop-payment" on the original cashier's check and send a replacement check for the same amount. *Id.* (Kentucky Action Compl. Ex. 14 at 1; Colorado Action ¶ 80.) SLS further offered to pay any fees associated with the additional check, agreed to honor the original payoff amount and date of receipt, and assured him they would adjust the credit

reporting to reflect no adverse actions.  *Id.*  (Kentucky Action Compl. Ex. 14 at 1.)

      Massey never sent a replacement check, however, and eventually defaulted on his debt.  *Id.* at *2.  (Colorado Action ¶¶ 82–83.)  On April 2, 2020, he received a Notice of Default and Intent to Foreclose.  *Id.*  (Kentucky Action ¶ 30; Colorado Action ¶ 94.)  On June 10, 2020, SLS, through counsel, again requested Massey execute a "stop-pay" on the check and further requested that he sign an indemnity agreement.  *Id.*  (Kentucky Action Pl.'s Voluntary Disclosures ¶ 3; Colorado Action ¶¶ 91–92.)  Massey alleges he had been informed by his bank that the holder of a cashier's check can still negotiate or cash it despite a "stop-pay" and, therefore, he reasonably feared an indemnification agreement would result in his liability to SLS or his bank were the original check later used.  *Id.*  (Kentucky Action Pl.'s Voluntary Disclosures ¶¶ 4–5; Colorado Action ¶ 91.)  Massey instead requested that SLS sign an indemnification agreement, which SLS refused to do.  *Id.*  (Kentucky Action Pl.'s Voluntary Disclosures ¶¶ 4–5; Colorado Action ¶ 93.)  Massey's bank eventually agreed to "stop payment" on the cashier's check and transferred $25,849.76 into his account on June 16, 2020.  *Id.*  (Colorado Action ¶ 95.)

      Massey filed the Kentucky Action on May 12, 2020 (Kentucky Action, ECF No. 1), alleging claims against SLS for: (1) theft of his financial resources by fraud and deceptive practices; (2) extortion, mail fraud, malicious threats to cause him to suffer financial harm; (3) malicious, deliberate, and intentional infliction of emotional, psychological, and physical distress; (4) maliciously reporting false and derogatory credit information to credit reporting agencies with the specific intent and desire to harm his credit and negatively affect his ability to access credit; and (5) malicious and intentional harm to plaintiff's business and plaintiff's business opportunities.  *Id.*  Massey

5

sought at least $10 million in damages and also requested punitive/exemplary damages. (*Id.*)

SLS moved to dismiss Massey's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on July 10, 2020. (Kentucky Action, ECF No. 14 at 4.) On January 29, 2021, Judge Stivers issued an order granting SLS's motion to dismiss and entering final judgment that same day. In so holding, Judge Stivers found that Massey failed to state a claim on for each claim alleged, including theft, fraud, extortion, outrage, and punitive damages. *See Massey*, 2021 WL 311868, at *3–*6. The order did not specify whether dismissal was with or without prejudice.

**B.  Colorado Action**

Without filing an amended complaint in the Kentucky Action or appealing Judge Stivers's decision to the United States Court of Appeals for the Sixth Circuit, on March 1, 2021, Massey filed his 44-page Complaint in this Court against Computershare Limited, Computershare US, Computershare Loan Services, Bank of America, and SLS. (ECF No. 1.) He alleged that this Court has subject matter jurisdiction under 28 U.S.C. § 1332(a). (*See id.*)

Following numerous procedural issues which the Court will not recite here, Massey filed a 47-page Amended Complaint ("AC") on April 12, 2021, which is the operative pleading in the Colorado Action. (ECF No. 18.) The named defendants are Computershare Limited, Computershare US, Inc., Computershare Mortgage Services, Inc., Computershare, Inc., Computershare US Services, Inc., Computershare Loan Services, Bank of America, and SLS (collectively, "Defendants").[3] (*Id.*) In a section

---

[3] Only SLS, Computershare Loan Services, and Bank of America are currently represented by counsel in this action. It appears as though none of the remaining defendants

6

entitled "Alter Ego Allegations," Massey alleges that "[SLS] was an Alter Ego of Defendant Computershare Loan Servicing [*sic*], who is in turn an Alter Ego of Computershare US, who in turn is an Alter Ego of Computershare Limited."  (*Id.* ¶ 26.)  In a section entitled "AGENCY: AIDING and ABETTING and CONSPIRACY allegations," Massey alleges that "Defendants . . . were acting as the agents, employees, and/or representatives of each other, and were acting within the course and scope of their agency and employment . . . ."  (*Id.* ¶ 46.)

In the AC, Massey brings eleven claims against all Defendants: (1) fraud in the inducement; (2) fraud, deceit, and fraudulent misrepresentation; (3) breach of fiduciary duty; (4) negligence, breach of duty to exercise reasonable care, breach of duty to exercise due diligence; (5) fraudulent concealment; (6) embezzlement; (7) misappropriation of funds; (8) theft; (9) extortion; (10) malicious and intentional infliction of emotional/and mental stress; and (11) defamation-libel and slander.  (*Id.*)

In sum, the only real differences between the Kentucky Action and the Colorado Action are a breach of fiduciary claim, a negligence claim, and the inclusion of several additional corporate entities, which Massey alleges are SLS's alter egos.[4]  (ECF No. 14 at 9.)  SLS also points out in the Motion for Show Cause Order that "conspicuously absent" from the AC are Massey's claims in the Kentucky Action that the lost payoff check he claims was stolen by SLS was never cashed and that his bank has refunded him the full value of that check.  (*Id.* at 8–9.)

On March 26, 2021, SLS filed the Motion for Show Cause Order, arguing that the

---

have been served.  (*See* ECF No. 48.)

[4] SLS appears to concede that the Computershare Defendants are its corporate affiliates.  (ECF No. 46 at 8.)

Court should dismiss with prejudice the entirety of Massey's lawsuit on the grounds that it is barred by res judicata, or in the alternative, collateral estoppel.  (ECF No. 14.) Massey filed a response in opposition[5] (ECF No. 41), and SLS replied (ECF No. 46).

Although the Court stayed this case on March 26, 2021 pending its resolution of the Motion for Show Cause Order (ECF No. 17), Massey continued to file at least four motions in violation of the Court's stay, including a Motion to Strike Notice of Related Case, Motion for Entry of Default Judgement [against Computershare Loan Services], Motion for Entry of Default Judgment [against Bank of America], and Motion for Clarification of the Court's Orders Staying Proceedings.[6]  (ECF Nos. 24, 27, 36, 44.) One of his motions resulted in clerk's default being entered against Computershare Loan Services (ECF No. 29), which prompted Computershare Loan Services to file a motion to set aside the clerk's default[7] (ECF No. 31).

On December 3, 2021, the Court issued an Order to Show Cause as to why it should not dismiss without prejudice the claims asserted against those Defendants who have not been served under Federal Rule of Civil Procedure 4.  (ECF No. 48.)

---

[5] As SLS points out in its reply, Massey's response contains numerous arguments which are simply inaccurate statements of the law and conclusory assertions.  (See ECF No. 46 at 3.)  The Court will not address any of these meritless arguments, and will only address those it finds necessary to resolve the Motion for Show Cause Order.

[6] Massey's decision to disregard the Court's stay and continue filing motions has resulted in a considerable waste of scarce judicial resources, as well as requiring Defendants to expend resources responding to his motions.  Massey is on notice that any future violations of the Court's orders may result in orders to show cause as to why the Court should not impose significant monetary sanctions on him for violating its orders.

Because Massey's motions (ECF Nos. 24, 27, 36, and 44) were filed after the Court stayed this case and in violation of the Court's Order (ECF No. 17), the Court will strike them from the docket and will address them no further.

[7] As explained above, Massey filed the Motion for Entry of Default against Computershare Loan Services in violation of the stay.  To restore order to the docket, the Court will vacate the entry of Clerk's default against Computershare Loan Services.

Massey's response is due December 13, 2021. (*Id.*) All other pending motions are ripe for review.

## II. LEGAL STANDARD[8]

Certain federal procedures apply when res judicata is raised in federal court. Because res judicata is an affirmative defense, the burden of proof rests with the defendant. *In re Sprint Nextel Derivative Litig.*, 437 F. Supp. 3d 927, 935 (D. Kan. 2020) (citing *Mir v. Brown*, 2019 WL 2137285, at *5 (D. Kan. May 16, 2019)). A defendant may raise such a defense by a motion to dismiss for failure to state a claim, and the defense can be presented on records from prior cases involving the same parties.[9] *Id.* (citations omitted.) "The court may 'take judicial notice of publicly-filed records in our court and certain other courts concerning matters that bear directly upon the disposition of the case at hand.'" *Id.* (quoting *United States v. Ahidley*, 486 F.3d 1184, 1192, n.5 (10th Cir. 2007), *cert. denied*, 552 U.S. 969 (2007)).

As for the substantive law of res judicata, federal common law governs the preclusive effect of a prior dismissal by a federal court sitting in diversity.[10] *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508 (2001). But federal law in turn

---

[8] In the briefing, the parties proceed on the understanding that Colorado and Tenth Circuit law apply to this case. (ECF Nos. 14, 41, 46.) However, as explained above, the Court must apply Kentucky's res judicata principles. The Court notes that even if it applied Colorado or Tenth Circuit law, the results in this case would be the same.

[9] In the Motion, SLS cites numerous cases demonstrating that in the District of Colorado, judges routinely issue orders to show cause why an action should not be dismissed where it is brought to the court's attention that res judicata and/or collateral estoppel would appear to bar the relitigation of matters already decided in another proceeding. (ECF No. 14 at 12 (citing cases).) This is the approach the parties—and therefore the Court—took in this case, as opposed to Defendants filing motions to dismiss.

[10] In the Kentucky Action, the court had "subject matter jurisdiction under 28 U.S.C. § 1332(a) because Massey is a citizen of Kentucky, SLS is incorporated in Delaware and has its principal place of business in Colorado, and Massey alleges damages in excess of $75,000. (Compl. 3-4)." *Massey*, 2021 WL 311868, at *2.

9

ordinarily applies "the law that would be applied by state courts in the State in which the federal diversity court sits." *Id.* Because SLS invokes the preclusive effect of a diversity-based judgment of a federal district court in Kentucky, the court applies Kentucky law in determining the preclusive effect of the judgment in the Kentucky Action. *See id.* at 509 (effect of judgment by California federal district court sitting in diversity is determined from California's law of claim preclusion); *In re Sprint Nextel Derivative Litig.*, 437 F. Supp. 3d at 935 ("Because Defendants invoke the preclusive effect of a diversity-based judgment of a federal district court in New York – *La. Mun. Police Emp. Ret. Sys. v. Hesse*, 962 F. Supp. 2d 576 (S.D.N.Y. 2013) ("LAMPERS") – the court applies New York law in determining the preclusive effect of the LAMPERS judgment.")

Under Kentucky law, res judicata, or claim preclusion, "is a bar to a subsequent action where a former judgment has been rendered by a court of competent jurisdiction between the same parties upon the same matter directly involved in the prior suit." *Drake v. McKinney*, 2020 WL 5301155, at *2–3 (W.D. Ky. Sept. 4, 2020) (quoting *Wallace v. Ashland Oil & Transp. Co.*, 305 S.W.2d 541, 543–44 (Ky. 1957)). "In Kentucky, three elements must be met for res judicata. They are identity of the parties, identity of the causes of action, and resolution of the prior action on the merits." *Id.* (quoting *Petty v. Lynch*, 102 F. App'x 24, 25 (6th Cir. 2004)).

The scope of the doctrine is very broad:

> [t]he rule is elementary that, when a matter is in litigation, parties are required to bring forward their whole case; and "the plea of res judicata applies not only to the points upon which the court was required by the parties to form an opinion and pronounce judgment, but to every point which properly belonged to the subject of litigation, and which the

> parties, exercising reasonable diligence, might have brought forward at the time."

*Id.* (quoting *Combs v. Prestonsburg Water Co.*, 84 S.W.2d 15, 18 (Ky. 1935) (internal citations omitted)). Therefore, res judicata applies not only to the issues disposed of in the first action, but to every point which properly belonged to the subject of the litigation in the first action and which in the exercise of reasonable diligence could have been brought forward that the time. *Id.* (citation omitted). "Where two actions involving the same issue are pending between the same parties, 'irrespective of which action or proceeding was first brought, it is the first final judgment rendered in one of the courts which becomes conclusive in the other as res judicata.'" *Id.* (quoting *Westwood Chem. Co. v. Kulick*, 656 F.2d 1224, 1227 (6th Cir. 1981)).

### III. ANALYSIS

**A.     Identity of the Parties**

First, the Court examines whether SLS has met the identity of the parties element. In Kentucky, "[p]rivity connotes those who are in law so connected with a party to the judgment as to have such an identity of interest that the party to the judgment represented the same legal right." *Drake*, 2020 WL 5301155, at *3 (quoting *Waddell v. Stevenson*, 683 S.W.2d 955, 958 (Ky. Ct. App. 1984) (internal quotation marks and citation omitted)).

As an initial matter, the Court notes that SLS alone has brought the Motion for Show Cause Order. It does not state that the Motion for Show Cause Order is brought on behalf of Computershare Loan Services, though counsel for SLS also represents Computershare Loan Services. But because the two entities are represented by the same counsel, and the AC acknowledges that Computershare Loan Services is a "trade

11

name . . . under which [SLS] does business," (ECF No. 18 ¶ 23), the Court considers whether Computershare Loan Services is in privity with SLS and whether res judicata bars this case against Computershare Loan Services.

Regarding SLS, it is undisputed that it was a party in the Kentucky Action. (ECF No. 41 at 4.) Massey states in his response that his case in Kentucky named SLS as the one and only defendant. (*Id.*) Even Massey tacitly concedes that if res judicata bars this action, it would apply to SLS. (*Id.*)

Regarding Computershare Loan Services, Massey alleges in the AC that it is a trade name under which SLS does business and is "neither an LLC nor a corporation." (ECF No. 18 ¶ 23.) He further alleges that it is an alter ego of SLS. (*Id.* ¶ 26.) SLS emphasizes that Massey "cannot have it both ways when pleading alter ego allegations and simultaneously defending against the preclusive effect of res judicata." (ECF No. 46 at 9 (citing *Lenox MacLaren Surgical Corp. v. Medtronic*, 847 F.3d 1221, 1243 (10th Cir. 2017) ("[The plaintiff] cannot now 'have it both ways: either [the defendants] are in privity with one another for both liability and res judicata purposes, or they are not in privity for either purpose.'"); *R.G. Fin. Corp. v. Vergara-Nunez*, 446 F.3d 178, 186 (1st Cir. 2006) ("[W]e do not see how [the sister subsidiary] and [the parent] can be tied so closely to [another subsidiary named in the prior action] for purposes of the counterclaim and yet, at the same time, be considered distinct from [that other subsidiary] for purposes of the res judicata analysis.")).) Accordingly, based on Massey's own allegations and the persuasive authority provided by SLS, the Court easily finds that Computershare Loan Services is so connected with SLS (in whose favor the Kentucky Action was resolved) that it has the same legal rights as SLS for the

purposes of satisfying this element.

With respect to Bank of America, it argues that although it was not a party in the Kentucky Action, it was the prior servicer of the loan that was the subject of the Kentucky Action, and that res judicata or collateral estoppel bars the Colorado Action against it. (ECF No. 22 at 1.) Thus, Bank of America argues that it is in privity with SLS, to whom it assigned servicing of the loan. (*Id.*) Massey does not appear to specifically address Bank of America's argument in his response. (ECF No. 41.) He merely argues that "[a]t the very most, if at all, res judicata can apply only as to [SLS] and in no way to the remaining named defendants, however, in light of the clearly defective nature of the district court's analysis and decision, a better and more compelling argument is that res judicata does not apply in this instance under any set of circumstances." (*Id.* at 4–5.)

The Court finds that Bank of America, as the prior loan servicer, is in privity with SLS. *Harris v. Ocwen Loan Servicing, LLC*, 2017 WL 8791308, at *3 (6th Cir. Nov. 22, 2017) (finding that appellees are in privity with defendants from first case where "Ocwen is the current loan servicer, . . . [and] GMAC was the prior loan servicer . . . —but all share a common interest: the lawfulness of the ongoing foreclosure proceedings").

Therefore, the Court finds that there is an identity of the parties among SLS (the only defendant in the Kentucky Action) and SLS, Computershare Loan Services, and Bank of America (the latter two are in privity with SLS), and therefore, the first element of res judicata is satisfied.[11]

---

[11] Regarding the remaining Defendants, the Court notes that they either have not been served or the Court is not satisfied that Massey properly effected service. Accordingly, the Court has entered an Order to Show Cause on this issue. (ECF No. 48.) However, because these Defendants have not been served and are not represented by counsel, the Court cannot

### B.     Identity of the Causes of Action

Next, the Court addresses whether SLS has established that the Kentucky and Colorado Actions satisfy the identity of causes of action element.  "Identity of causes of action means an 'identity of the facts creating the right of action and of the evidence necessary to sustain each action.' *Westwood Chemical Co. v. Kulick*, 656 F.2d 1224, 1227 (6th Cir. 1981)."  *Hashemian v. Louisville Reg'l Airport Auth.*, 493 S.W.3d 843, 846 (Ky. Ct. App. 2016) (citing *Sanders Confectionery Products, Inc. v. Heller Fin., Inc.*, 973 F.2d 474, 484 (6th Cir.1992)).  "Res judicata bars not only those claims previously raised, but those which could have been raised in the prior action." *Id.*  The Kentucky Supreme Court explains that

> Kentucky follows the "transactional approach" in determining whether identity of causes of action exists.  "This Court's "task is to 'compare the factual issues explored in the first action with the factual issues to be resolved in the second.'"  "[T]he test for 'common nucleus of operative fact' as defined for purposes of res judicata is not simply one of whether the two claims are related to or may materially impact one another."  "[T]he connection between the core facts of the [prior] suit ... and the core facts of the [current suit cannot be] too attenuated[.]"  "If the factual scenario of the two actions parallel, the same cause of action is involved in both."

*Lawrence v. Bingham Greenebaum Doll, L.L.P.*, 599 S.W.3d 813, 826 (Ky. 2019) (citations omitted).

In the case at hand, the facts and evidence presented in the Kentucky Action are the same as those presented in the Colorado Action.  The instant case arises out of the

---

consider whether res judicata also applies to them in this Order.  However, the Court notes that SLS makes a compelling argument as to why the unserved Defendants are in privity with it; should Massey successfully serve these parties, the Court strongly cautions him to consider whether he can make a non-frivolous argument that they are not in privity with SLS and therefore bound by the dismissal of claims against SLS in the Kentucky Action and the Court's ruling here.

same lost check and the fallout therefrom that was at issue in the Kentucky Action. As SLS explains, the factual basis of the two lawsuits are that: Massey sent a parcel containing a payoff check to SLS; SLS thereafter informed him that neither the parcel nor the check could be located; SLS then requested that Massey resend the payoff funds, stating that it would reimburse him for any associated costs, honor the original payoff quote from several months prior, and adjust its credit reporting accordingly; Massey rejected SLS's offers of accommodation and ceased making any further monthly payments on his loan; and SLS has continued to send him periodic account correspondence. (ECF No. 46 at 7.)

On these facts, Massey alleged claims in the Kentucky Action based on theories of theft, fraud, extortion, intentional infliction of emotional distress ("IIED"), and derogatory credit reporting. Here, Massey again seeks to assert similar claims based on theories of theft (claims 6, 7, and 8); fraud (claims 1, 2, and 5); extortion (claim 9), IIED (claim 10), and derogatory credit reporting (count 11). He has added two new claims for breach of fiduciary duty (claim 3) and negligence, breach of duty to exercise reasonable care, breach of duty to exercise due diligence (claim 4), but those claims are based on the same essential facts and seek to redress the same alleged injury as his other theories and, importantly, could have been brought in the Kentucky Action.

Massey's main argument that there is no identity of the causes of action is that "[t]he majority, if not all, of the causes of action that are set forth in [the Colorado Action], in some manner, or to some degree, postdate the filing of the initial complaint filed in [the Kentucky Action], and therefore, the new Colorado complaint is not affected by res judicata." (ECF No. 41 at 7.) To support this proposition, he relies on *Whole*

15

*Woman's Health v. Hellerstedt*, 136 S. Ct. 2292, 2305 (2016), *as revised* (June 27, 2016), which explains that "development of new material facts can mean that a new case and an otherwise similar case do not present the same claim." Massey relies on a quotation from *Whole Woman's Health*, which in turn quotes a Third Circuit decision, *Morgan v. Covington*, 648 F.3d 172, 178 (3d Cir. 2011), which states that "res judicata does not bar claims that are predicated on events that postdate the filing of the initial complaint." *Id.* Massey argues that after the Kentucky Action was filed, "SLS continued unabated to engage in the oppressive, unlawful, egregious conduct." (ECF No. 41 at 8.) He states that such conduct includes:

> [s]ending threatening and intimidating extortion-based letters to the plaintiff on a monthly schedule in attempts to force, compel, or convince plaintiff to send money/payments to the defendant. Dates of such behavior include: 5-31-2020, 6-30-2020, 7-31-2020, 8-31-2020, 9-30-2020, 10-31-2020, 11-30-2020, 12-31-2020, 1-31-2021, 2-17-2021, 2-28-2021, 3-31-2021, 4-30-2021. On March 1, 2021, plaintiff filed his complaint in the Colorado District Court.
>
> On information and belief, defendant has continued on a regular and consistent basis to report derogatory credit information about plaintiff to credit reporting agencies.

(*Id.*) In the reply, SLS does not specifically address the issue Massey raises regarding whether claims that arose after the filing of his operative complaint in the Kentucky Action are barred by res judicata or collateral estoppel.[12] (ECF No. 46.) Instead, SLS reiterates its argument that the entire Colorado Action should be dismissed with prejudice as barred by res judicata, or alternatively, collateral estoppel. (*Id.*)

Under Kentucky law, "the rule of res judicata does not act as a bar if there are

---

[12] Because neither party discusses whether claims, or portions of claims, that postdate the filing of the operative complaint in the Kentucky Action may be barred by collateral estoppel, the Court does not analyze the issue under this doctrine. (ECF Nos. 41, 46.)

16

different issues or the questions of law presented are different." *Thomen v. Edwards*, 2008 WL 900872, at *2 (Ky. Ct. App. Apr. 4, 2008). However, it has long been recognized that a party may not split his cause of action. *Id.* Therefore, if a cause of action should have been presented, and the party failed to do so and the matter should again arise in another action, it will be held that the first action was res judicata as to all causes that should have properly been presented. *Id.* However, any claim that was not ripe at the filing of the complaint in the Kentucky Action, or any amendment thereto, may be viable. *See id.* (citing *Newman v. Newman*, 451 S.W.2d 417 (Ky. App. 1970)).

The Court observes that the AC in the Colorado Action does not clearly allege what facts in each of the eleven claims in this case might have arisen after the filing of the operative complaint in the Kentucky Action, such that they fall under this exception to res judicata. Moreover, while in his response Massey lists the dates of allegedly "threatening and intimidating extortion-based letters" he received from SLS, he does not point to the paragraphs of his AC which support the argument. Regardless, the Court cannot dismiss with prejudice as barred by res judicata any claims which may have arisen after the filing of the operative pleading in the Kentucky Action.

Therefore, the Court will dismiss with prejudice all claims against SLS, Computershare Loan Services, and Bank of America which arise out of facts that occurred on or before May 12, 2020, the date on which Massey filed the operative complaint in the Kentucky Action. The Court will dismiss without prejudice all claims against SLS, Computershare Loan Services, and Bank of America which arise out of facts that occurred after May 12, 2020.

C.  **Resolution of the Prior Action on the Merits**

SLS argues that the dismissal of the Kentucky Action constitutes a final judgment

on the merits even though the Order did not explicitly state that the dismissal was with prejudice. (ECF No. 46 at 4.) In response, Massey contends that because the "Kentucky order has the appearance of being an administrative closure of [his] case," it is "therefore . . . not a dismissal with prejudice." (ECF No. 41 at 7.) He fails to explain the basis for this argument, and regardless, the undersigned sees nothing in Judge Stivers's order indicating it is a mere administrative closure. Massey also contends that the "Kentucky court's decision was grounded in significant part on a gross misunderstanding of the facts and a shocking misinterpretation of applicable law and controlling authority . . . ." (*Id.* at 5.) Finally, he contends that because the order dismissing the Kentucky Action did not "provide a clear and explicit statement that the complaint is dismissed with prejudice," it "was not a final judgment on the merits." (*Id.*)

The Court finds that, to the extent it addresses claims arising out of facts which occurred on or before May 12, 2020 in the Kentucky Action, the dismissal in the Kentucky Action constitutes a final judgment on the merits. The Kentucky court granted SLS's motion to dismiss all of Massey's claims and directed the Clerk to "strike this matter from the active docket." *Massey*, 2021 WL 311868, at *6.

"A dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is a judgment on the merits, and is therefore done with prejudice." *Pratt v. Ventas, Inc.*, 365 F.3d 514, 522 (6th Cir. 2004) (quoting *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 399 n.3 (1981) (internal quotation marks omitted)); *see also Slocum v. Corp. Express U.S.*, 446 F. App'x 957, 960 (10th Cir. 2011) ("Rule 12(b)(6) dismissals, unless otherwise indicated, constitute a dismissal with prejudice.").

18

## IV. CONCLUSION

For the foregoing reasons, the Court ORDERS:

1. Defendant Specialized Loan Servicing LLC's ("SLS") Motion for Show Cause Order and To Stay Proceedings Pending Resolution of Same ("Motion for Show Cause Order") (ECF No. 14) is GRANTED IN PART AND DENIED IN PART as follows:

    a. All claims against SLS, Computershare Loan Services, and Bank of America which arise out of facts that occurred on or before May 12, 2020 are DISMISSED WITH PREJUDICE because they are barred by res judicata;

    b. All claims against SLS, Computershare Loan Services, and Bank of America which arise out of facts that occurred after May 12, 2020 are DISMISSED WITHOUT PREJUDICE;

2. The stay (ECF No. 17) in this case is LIFTED;

3. To the extent the Court's Order at ECF No. 17 can be construed as an Order to Show Cause, it is DISCHARGED[13];

4. Massey's Motion to Strike Notice of Related Case (ECF No. 24) is STRICKEN;

5. Massey's Motion for Entry of Default Judgement [Against Defendant Computershare Loan Services] (ECF No. 27) is STRICKEN;

6. Computershare Loan Services's Motion to Vacate and Set Aside Clerk's Entry of Default (ECF No. 31) is STRICKEN;

---

[13] The docket entry for this Order does not state that it is an Order to Show Cause, but Massey filed his response to the Order and the Motion for Show Cause Order with the intent that it be a response to an Order to Show Cause. (ECF No. 17.) Thus, to the extent any party construed the Order as an Order to Show Cause, such Order to Show Cause is discharged.

7. Massey's Motion For Entry of Default Judgment [Against Bank of America] (ECF No. 36) is STRICKEN;

8. Massey's Motion for Clarification of the Court's Orders Staying Proceedings (ECF No. 44) is STRICKEN;

9. The Clerk's Entry of Default against Computershare Loan Services (ECF No. 29) is VACATED; and

10. The Clerk shall mail a copy of this Order to the *pro se* Plaintiff and enter a certificate of service on the docket.

Dated this 7th day of December, 2021.

BY THE COURT:

William J. Martinez
United States District Judge