**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 21-cv-0601-WJM-SBP

JAMES HARRISON MASSEY,

      Plaintiff,

v.

COMPUTERSHARE LIMITED, also known as COMPUTERSHARE, INC., also known
as COMPUTERSHARE US, INC.,
BANK OF AMERICA, NA, and
SPECIALIZED LOAN SERVICING, LLC, alternatively known as COMPUTERSHARE
LOAN SERVICES,

      Defendants.

---

**ORDER GRANTING IN PART DEFENDANTS'
MOTION FOR ATTORNEYS' FEES AND OTHER SANCTIONS**

---

This matter is before the Court on Defendants Computershare Limited,

Computershare U.S., Inc., Specialized Loan Servicing LLC, and Computershare Loan

Services'[1] (collectively, "Defendants") Motion for Attorneys' Fees and Other Sanctions

("Motion") (ECF No. 163).  Plaintiff James Harrison Massey, proceeding *pro se*,[2] filed a

response (ECF No. 165), and Massey filed a reply (ECF No. 167).

---

[1] Specialized Loan Servicing LLC and Computershare Loan Services are referred to collectively herein as "SLS," based on Defendants' representation that "Computershare Loan Services is merely a trade name for SLS and not a standalone legal entity."  (ECF No. 163 at 1 n.1.)

[2] As the Court has noted in prior orders, while proceeding *pro se*, Massey was previously a licensed attorney.  (*See, e.g.,* ECF No. 137 at 2–3 n.3; ECF No. 156 at 9.)  As a result, the Court generally need not afford him the same liberal construction of his pleadings to which *pro se* parties would ordinarily be entitled.  *See, e.g., Tatten v. City & Cnty. of Denver,* 730 F. App'x 620, 625 (10th Cir. 2018); *McNamara v. Brauchler,* 570 F. App'x 741, 743 (10th Cir. 2014).

After initial review, the Court ordered Defendants to supplement their Motion with appropriate supporting documentation evidencing the complete amount of fees they intended to seek in connection with these proceedings.  (ECF No. 174.)  Massey filed an objection to the Court's Order ("Objection") (ECF No. 175), which the Court also considers herein.[3]  For the reasons explained below, the Motion is granted in part, and Massey's Objection is overruled.

## I. BACKGROUND

In 2019, Massey sent a cashier's check for $25,849.76 to SLS through certified mail to absolve his outstanding debt on a home equity line of credit ("HELOC").  (ECF No. 50 at 3.)  Although SLS initially confirmed receipt of Massey's letter, the check ostensibly then went missing.  (*Id.* at 3–4.)  SLS's subsequent efforts to convince Massey to acquire a "stop-payment" on the original check and send a replacement for the same amount proved unfruitful, and Massey defaulted on his debt in the spring of 2020.  (*Id.* at 4–5.)  Massey has since filed four lawsuits in various forums in Kentucky and Colorado arising from this same series of events.  (*Id.* at 5; ECF No. 163 at 2–7; ECF No. 179 at 3–4.)

Massey initially filed suit against SLS in federal court in the Western District of Kentucky, seeking upwards of $10 million in damages.  *See James Harrison Massey v. Specialized Loan Servicing LLC,* No. 1:20-cv-00088-GNS-HBB (W.D. Ky.) ("*Massey I*"). In January 2021, the Kentucky federal court dismissed Massey's claims with prejudice.[4]

---

[3] The complete title of Massey's Objection is "Plaintiff's Objection to this Court's Sua Sponte Order (Entered 10/15/2024) Whereby the Court Invites, and Encourages the Defendants to Supplement Their Previously Denied Motino for Attorney's Fees."  (ECF No. 175.)

[4] While the Kentucky federal court's order did not specify whether the dismissal was whether or without prejudice, this Court reasoned the dismissal was with prejudice, including

*Massey I*, 2021 WL 311868, at *6 (W.D. Ky. Jan. 29, 2021).  Massey did not appeal but filed a motion to vacate over two years after the Kentucky federal court entered final judgment, which the district court denied after finding it to be "nothing other than Plaintiff's latest attempt to relitigate his claim against Defendant."  *Massey I,* ECF Nos. 27, 34.

Massey filed this action ("*Massey II*") in March 2021, shortly after *Massey I* was dismissed.  (ECF No. 1.)  After Massey filed his First Amended Complaint ("FAC") (ECF No. 18), the Court stayed the action pending resolution of Defendants' motion to show cause why it should not be dismissed based on res judicata.  (ECF Nos. 14, 17.)  After the parties completed briefing the issue, the Court dismissed with prejudice all claims against Defendants arising out of facts that occurred on or before May 12, 2020, the date Massey filed the operative complaint in *Massey I*.  (ECF No. 50 ("First Dismissal Order").)  However, based on Massey's argument that at least some of his claims were related to Defendants' conduct post-dating the filing of his complaint in *Massey I,* the Court dismissed *without* prejudice all claims against Defendants arising out of facts that occurred after May 12, 2020—although it was unclear to which of his eleven claims in the FAC that applied.  (*Id.* at 16–17.)

Massey then filed his Second Amended Complaint ("SAC"), in which he attempted to explicitly characterize his claims as relating only to conduct "occurring, on, or after, May 12, 2020."  (ECF No. 71-1 at ¶¶ 1–2.)  Then-Magistrate Judge Kato S. Crews permitted Massey to file the SAC (ECF No. 80) but thereafter recommended the

---

because the Kentucky court directed the Clerk to "strike this matter from the active docket." (ECF No. 50 at 18 (quoting *Massey I*, 2021 WL 311868, at *6).)

Court dismiss the action with prejudice.  (ECF No. 137 ("Recommendation").)  Judge

Crews reasoned that, while the SAC "purport[ed] to base its claims on acts done after

May 12, 2020," it merely took Massey's "updated monthly HELOC statements issued

after May 12, 2020, to allege a series of claims that involve[d] the same material facts

involved in the Kentucky Action."  (*Id.* at 4–10).  The Court adopted the

Recommendation and entered final judgment in Defendants' favor in March 2024.  (ECF

Nos. 156, 157.)

      Massey immediately filed a notice of appeal, and has since followed it with:

- A "motion for clarification," describing the Court's judgment as "wholly
  unexplained" and "inexplicable" based on his view of the substantive
  application of C.R.S. 4-3-310 to his claims (ECF No. 159 at 1);

- Two demands for a jury trial—the second entirely duplicative of the first—
  in which Massey asserts, *inter alia,* that defense counsel has "successfully
  impinged the integrity of the district courts" (ECF Nos. 168, 176); and

- A petition for vacatur—again, wholly duplicative of an earlier-filed motion,
  which the Court had already struck for failure to comply with its Revised
  Practice Standards (ECF Nos. 147, 184)—rehashing his substantive
  claims and asking this Court to find the Kentucky federal court's decision
  was invalid (ECF No. 177).

      Moreover, throughout this litigation, the Court has, non-exhaustively, summarily

denied two "emergency motions for temporary restraining order and preliminary

injunction" and three motions for entry of default against Defendants for whom no proof

of service had been filed by Massey (ECF Nos. 5, 6, 26, 29, 31, 34, 55, 56, 64, 96, 98–

100); stricken numerous of Massey's filings for repeated failures to comply with the Court's Revised Practice Standards (*e.g.,* ECF Nos. 25, 139, 184); and acknowledged on more than one occasion that Massey's briefs contained inaccurate statements of law (*e.g.,* ECF No. 50 at 8 n.5; ECF No. 156 at 10 n.4). The Court has also admonished Massey for continuing to file motions in contravention of its Order staying the proceedings, which "resulted in a considerable waste of scarce judicial resources" and "requir[ed] Defendants to expend resources responding to his motions." (ECF No. 50 at 8 n.5.) The Court expressly warned him at that time "that any future violations of the Court's orders may result in orders to show cause as to why the Court should not impose significant monetary sanctions on him for violating its orders." (*Id.*)

Further still, during the pendency of *Massey II,* Massey filed a third *pro se* action against SLS in Kentucky state court, which SLS subsequently removed to the Western District of Kentucky. *James H. Massey, et al. v. Specialized Loan Servicing, LLC,* No. 1:23-cv-00020-GNS (W.D. Ky.) ("*Massey III*"). In September 2023, the Kentucky federal court dismissed the action after similarly finding it barred by res judicata. *Massey III,* 2023 WL 6096953, at *8 (W.D. Ky. Sept. 18, 2023); *see also* 2024 WL 1661242, at *1 (W.D. Ky. Apr. 17, 2024) (denying Massey's subsequent "motion for clarification" and "amended motion for reconsideration"). The Sixth Circuit has since affirmed the district court's dismissal of *Massey III. Massey v. Specialized Loan Servicing, LLC* ("*Massey III Appeal*"), 2024 WL 4471678, at *4 (6thCir. Sept. 9, 2024).

Defendants also recently informed the Court that Massey filed yet a fourth *pro se* lawsuit against Defendants, among others, only a month ago (October 2024) in Kentucky state court based on the same underlying facts as his first three lawsuits.

(ECF No. 179 at 3-4 (citing *James H. Massey, et al. v. Wilmington Savings Fund Society Fin. Corp., et al.,* No. 24-CI-01527 (Warren Circuit Court, Ky.) [*"Massey IV"*]).)

Via their Motion, Defendants seek their fees incurred in defending this action pursuant to section 13-17-201, C.R.S. (2024), or, in addition or in the alternative, the Court's inherent authority to sanction vexatious litigants. (ECF No. 163.) Defendants also ask the Court to enjoin Massey from filing additional lawsuits against them without first seeking leave to do so. (*Id.* at 13-14.)

## II. ANALYSIS

### A.    Massey's Objection

The Court first addresses Massey's Objection to its Order directing Defendants to supplement their Motion with complete supporting documentation of the fees they intend to seek in connection with these proceedings. (ECF Nos. 174, 175.)[5]

In significant part, Massey dedicates his Objection to discussing why the Order is

---

[5] In the Motion, Defendants included a footnote explaining that the total amount of fees sought

> does not include all fees incurred in preparing this motion or any other unbilled time since February 29, 2024. It also does not include any fees that have been, or will be, incurred in litigating Plaintiff's now-pending appeal. Defendants reserve the right to, and will, timely supplement this motion with the complete amount of fees claimed and the necessary evidentiary material supporting that amount after the final resolution of Plaintiff's appeal.

(ECF No. 163 at 13 n.10.) In view of this, the Court had discretion to (1) proceed with ruling on Defendants' Motion now, (2) defer ruling on the Motion, or (3) deny the Motion without prejudice with direction to re-file after Massey's appeal from the Court's final judgment is resolved. Fed. R. Civ. P. 54, advisory committee's note to 1993 amendment. Ultimately, the Court considered it in the interest of judicial efficiency to proceed with deciding any award of fees arising from these proceedings and defer consideration of any fee award arising from Massey's appeal to the Tenth Circuit. *See Flitton v. Primary Residential Mortg., Inc.,* 614 F.3d 1173, 1179–80 (10th Cir. 2010). Accordingly, the Court directed Defendants to supplement their Motion with complete documentation of the fees they reserved the right to seek in connection with these proceedings for present consideration. (ECF No. 174); *see also* D.COLO.LCivR 54.3. It is in this context that Massey filed the Objection.

"clearly unfair, and unconstitutionally premised," accusing the Court of "phantomizing [*sic*] the facts" and "clearly irrefutable evidence" and "display[ing] bright-light signs of bias and unfairness." (ECF No. 175 at 1–2.) Massey appears to base these perceived injustices on (1) the prior denial of his unrelated [Amended] Motion for Vacatur of Void Orders and Judgments (ECF No. 150); (2) the striking of his post-judgment Demand for Trial by Jury (ECF No. 168); and (3) at least as of the filling of his Objection, the fact that the Court had not yet ruled on his pending Motion for Clarification (ECF No. 159). (*See* ECF No. 175 at 1-2.) The Court has separately addressed each of those filings and will not rehash its rulings here. (*See* ECF Nos. 156, 169, 185.)

Setting aside the above, all that remains of Massey's Objection is his contention that the Court "previously denied" the Motion when the Clerk of Court entered final judgment including language that "the parties shall bear their own fees and costs." (ECF No. 1 at ¶ 2; ECF No. 157.) Put differently, the Court understands Massey's position to be that the Court already ruled on the issue of attorneys' fees via the final judgment, and for that reason it cannot grant Defendants' Motion. The Court is troubled by the fact that Massey failed to raise this point in his response to the Motion. (*See generally* ECF No. 165.) Nonetheless, it will consider the procedural propriety of Defendants' Motion in view of the final judgment's direction that each party would bear its own fees and costs.

Massey's argument suggests that the Court may not now award attorneys' fees without amending or altering the clerk's final judgment, which presumptively must be done via a Rule 59 or Rule 60 motion. The Tenth Circuit analyzed a related issue in *Yost v. Stout,* 607 F.3d 1239 (10th Cir. 2010). In that case, the district court resolved

the underlying action on summary judgment and, in the last sentence of the ensuing

final judgment, "sua sponte ordered the parties to bear their own costs and attorney's

fees." *Id.* at 1241.  The plaintiff then filed a timely Rule 59(e) "Motion to Alter or Amend

Judgment" requesting "that the court alter or amend its judgment . . . as to the issue of

attorney's fees." *Id.* at 1241–42.  Attached to his Rule 59(e) motion was a Rule 54(d)

motion for attorney's fees and expenses. *Id.*

Finding "[t]he motion wholly concern[ed] liability for attorneys' fees[] and not the

merits of the claims in this case," the district court construed the motion entirely as a

motion for attorney's fees under Rule 54(d)—not as a motion to alter or amend the

judgment under Rule 59(e). *Id.* at 1242 (citation omitted).  The district court then

granted the motion after determining the plaintiff was a prevailing party under § 1988

and granted the motion. *Id.*

On review, the precise issue before the Tenth Circuit was whether it was

"actually proper to view [the plaintiff's] motion as being brought under Rule 59, as

opposed to Rule 54," such that the motion tolled the time for filing an appeal. *Id.* at

1240, 1241 n.3; *see also* Fed. R. App. P. 4(a)(4)(A)(iv).  In concluding the plaintiff's

motion did *not* toll the deadline for filing an appeal, the Tenth Circuit reasoned that

plaintiff's motion "was properly construed as a motion brought pursuant to Rule 54(d)

rather than 59(e)" because it "did not challenge the district court's judgment on the

merits, but only challenged the court's denial of fees." *Id.* at 1243.  Put differently, the

motion need not have been brought under Rule 59 because it "concerned only a

collateral issue," rather than "a substantive change in the district court's judgment" on

the merits. *Id.*

In the Court's view, implicit in the Tenth Circuit's reasoning is the notion that Rule 54(d)(2) is an appropriate procedural mechanism for challenging the *sua sponte* denial of attorneys' fees and costs in a final judgment.  The Court further finds this conclusion is consistent with the long-established principle that district courts retain jurisdiction over the issue of attorneys' fees even after entry of final judgment.  *Lancaster v. Indep. Sch. Dist. No. 5,* 149 F.3d 1228, 1237 (10th Cir. 1998).

There is otherwise no dispute that Defendants' Motion was timely filed and adheres to the substantive requirements of Rule 54(d)(2).  The Court thus concludes, as the district court did in *Yost*, that it may proceed to consider Defendants' timely Rule 54(d) motion on the merits.  For the same reason, Massey's Objection is overruled.

## B.  Defendants' Motion for Attorneys' Fees

Defendants ask the Court to award them their attorneys' fees reasonably incurred in defending this lawsuit pursuant to (1) section 13-17-201, C.R.S. (2024) and/or (2) the Court's inherent powers to sanction bad faith litigants.  (ECF No. 163 at 1.)  The Court ultimately finds below that Defendants are entitled to a mandatory fee award under section 13-17-120 with respect to all but Massey's Fair Debt Collection Practices ("FDCPA") claim.  Given the substantial amount, the Court declines to award additional attorneys' fees as a sanction pursuant to its inherent authority.

### 1.   Section 13-17-201

Defendants assert they are entitled to recover their reasonable attorneys' fees pursuant to section 13-17-201, which provides in relevant part:

> In all actions brought as a result of a death or an injury to person or property occasioned by the tort of any other persons, where any such action is dismissed on motion of the defendant prior to trial under rule 12(b) of the Colorado rules of civil procedure, such defendant shall have judgment

for his reasonable attorney fees in defending the action.

§ 13-17-201(1).  Fee awards under section 13-17-201 are mandatory.  *Crandall v. City of Denver,* 238 P.3d 659, 665 (Colo. 2010).  "The statute also applies to a dismissal under Fed. R. Civ. P. 12(b) of a tort claim brought under Colorado law."  *Shrader v. Beann,* 503 F. App'x 650, 655 (10th Cir. 2012); *see also MacIntyre v. JP Morgan Chase Bank,* 827 F. App'x 812, 820 (10th Cir. 2020) (same); *Checkley v. Allied Prop. & Cas. Ins.,* 635 F. App'x 553, 559 (10th Cir. 2016) ("the granting of attorney's fees under [section 13-17-201] is mandatory and applies to dismissal under Federal Rule of Civil Procedure 12(b)").

The Court first briefly considers whether the dismissal of Massey's SAC was a dismissal pursuant to Federal Rule 12(b).  The primary basis for dismissal of Massey's SAC was on the grounds of res judicata.  (ECF No. 156 at 12.)  The Court has identified one case from this district in which U.S. District Judge Lewis T. Babcock concluded that section 13-17-201 did not apply because his dismissal of the plaintiff's complaint "was based on res judicata or principles of claim preclusion."  *Grynberg v. Grey Wolf, Inc.,* 2008 WL 3845424, at *2 (D. Colo. Aug. 18, 2008).

However, the Court has concluded a defendant may raise a res judicata defense "by a motion to dismiss for failure to state a claim."  (ECF No. 50 at 9 (citing *In re Sprint Nextel Derivative Litig.,* 437 F. Supp. 3d 927, 940 (D. Kan. 2020) (dismissing stockholder action for failure to state a claim upon which relief can be granted "[b]ased on the court's determination that res judicata bar[red] Plaintiffs' assertion that it would have been futile to demand that [the] Borad of Directors bring the action")).  Many other courts in this Circuit have reached the same conclusion.  *See, e.g., Gardner v. Delta Dental Plan of New Mexico, Inc.,* 2023 WL 2413775, at *2 (D.N.M. Mar. 8, 2023)

(granting rule 12(b)(6) motion to dismiss based on res judicata); *Wanjiku v. Johnson Cnty.,* 173 F. Supp. 3d 1217, 1223 (D. Kan. 2016) (dismissing claims barred by res judicata "under Rule 12(b)(6)"); *Lester v. Minnesota Life Ins. Co.,* 2014 WL 5601078, at *2 (N.D. Okla. Nov. 3, 2014) (granting motion "seek[ing] dismissal pursuant to Rule 12(b)(6)" after finding res judicata applied. The Court is further convinced that Defendants' res judicata defense was properly resolved under Rule 12(b) because, in addition to considering the allegations in the SAC, the Court could take judicial notice of the records from *Massey I*. (*See* ECF No. 50 at 9 (noting "[t]he court may 'take judicial notice of publicly-filed records in our court and certain other courts concerning matters that bear directly upon the disposition of the case at hand'" (citations omitted)); ECF No. 137 at 8 (building on the Court's First Dismissal Order); *see also Johnson v. Spencer,* 950 F.3d 680, 705-06 (10th Cir. 2020) (collecting cases considering res judicata defense when resolving Rule 12(b)(6) motion by "tak[ing] judicial notice of prior judicial acts found in records"). In any case, an additional, alternative basis for dismissing Massey's SAC in full was his failure to state a claim. (ECF No. 156 at 12 ("Rule 12(b)(6) provides an alternate basis to dismiss Plaintiff's claims against all of the Defendants").) The Court thus finds section 13-17-201's requirement that the SAC was dismissed in accordance with Rule 12(b) is satisfied.

The remaining question is then whether this lawsuit constitutes a "tort action" to which section 13-17-201's fee-shifting requirement applies. "Colorado courts have held that where a complaint alleges both tort and non-tort claims, attorney's fees should be granted under section 13-17[-]201 'if the action is primarily a tort action.'" *Checkley,* 635 F. App'x at 559 (citation omitted). Under this "predominance" test, courts consider

11

"whether the 'essence of the action' is tortious in nature (whether quantitatively by simple number of claims or based on a more qualitative view of the relative importance of the claims) or not." *Gagne v. Gagne,* 388 P.3d 1152, 1168 (Colo. App. 2014). "If the 'predominance test fail[s] to yield a clear answer, such as when the tort- and non-tort claims are equal in number of significance,' then courts should 'turn to the question of whether tort claims were asserted to unlock additional remedies . . . .'" *Checkley,* 635 F. App'x at 559–560 (quoting *Gagne,* 388 P.3d at 1168).

Massey's SAC alleged ten claims[6] for (1) violation of the Colorado Consumer Protection Act ("CCPA"); (2) invasion of privacy; (3) defamation; (4) intentional infliction of emotional distress ("IIED"); (5) extortion and attempted theft by fraud and deception; (6) civil elder abuse/attempted civil financial exploitation; (7) violation of the Fair Debt Collection Practices Act ("FDCPA"); (8) violation of the Colorado Fair Debt Collection Practices Act ("CFDCPA"); (9) violation of the Colorado Nonbank Mortgage Services Act ("CNMSA"); and (10) civil conspiracy in violation of the CCPA. (ECF No. 71-1 at 9-24.) The Court previously concluded that "no private right of action exists on" three of Massey's claims—namely, "extortion and attempted theft by fraud and deception," "civil elder abuse," and "violation of CNMSA." (ECF No. 137 at 12, *adopted at* ECF No. 156.). The Court will thus set these three claims aside and consider, of Massey's remaining seven claims, whether tort claims predominate.

---

[6] Given section 13-17-201 provides for the award of attorneys' fees only after a complete dismissal, the Court considers whether tort claims predominated Massey's operative complaint at the time of judgment—*i.e.,* the SAC. *See Dubray v. Intertribal Bison Co-op.,* 192 P.3d 604, 607 (Colo. App. 2008) (explaining statute applies only if the defendant obtains a complete dismissal of all claims). The Court previously construed the SAC as containing ten claims, "nine numbered and the tenth un-numbered." (ECF No. 137 at 2, *adopted at* ECF No. 156.)

Defendants argue that "[i]nvasion of privacy, defamation, and IIED are plainly state-law tort claims." (ECF No. 163 at 9.) They also assert Colorado state courts recognize "a claim alleging violation of the CCPA is a tort claim" for purposes of section 13-17-201. (*Id.* (quoting *Bldg. on Our Best LLC v. Sentinel Ins.,* 2016 WL 1756488, at *3 (D. Colo. May 3, 2016)); *see also U.S. Fax Law Ctr. v. Henry Schein, Inc.,* 205 P.3d 512, 519 (Colo. App. 2009) (characterizing the CCPA as a "tort[] under Colorado law"). The Court agrees on both accounts. The Court also notes that the Tenth Circuit, as well as courts outside of this Circuit, have characterized FDCPA claims as "akin to tort claims" in other contexts. *See Doston v. AWA Collections,* 2023 WL 3055574, at *3 (10th Cir. 2023) (citing *Sibley v. Fulton DeKalb Collection Serv.,* 677 F.2d 830, 834 (11th Cir. 1982) ("The thrust of the [FDCPA] is prevention of harassment and abuse as well as false, deceptive or misleading practices. It clearly falls into a traditional tort area analogous to a number of traditional torts.")).) In broad terms, the CFDCPA redresses similar conduct to the FDCPA. *See Flood v. Mercantile Adjustment Bureau, LLC,* 176 P.3d 769, 773 (Colo. 2008) ("Like the federal statute, the Colorado statute shares the remedial purpose of protecting consumers against debt collection practices that take advantage . . . ."). Thus, the Court readily finds that at least a quantitative majority—if not all—of Massey's claims sound in tort.

Defendants further argue that a fee award pursuant to section 13-17-201 is mandatory because Massey's tort claims "seek relief well beyond that available on a contract claim." (ECF No. 163 at 16.) Specifically, Defendants point out that Massey's SAC sought punitive damages, which are not recoverable in contract actions. (*See* ECF No. 71-1 at 25 (praying for "exemplary damages in the maximum amount

allowable")); *see also Ballow v. PHICO Ins.,* 878 P.2d 672, 682 (Colo. 1994) ("In

Colorado, punitive damages are available only pursuant to statute, and are not

recoverable in ordinary breach of contract cases." (citations omitted)).  Thus, for the

additional reason that the SAC seeks relief beyond what would be available on a

contract claim, the Court concludes Defendants are entitled to a mandatory fee award

under section 13-17-201.

Notably, Massey has not presented the Court with any counterargument in his

response as to why section 13-17-201 does not demand a mandatory fee award based

on the complete dismissal of his SAC.  (*See generally* ECF No. 165.)[7]  *However,*

because one of Massey's seven claims in the SAC was a federal statutory claim—

specifically, the FDCPA claim (ECF No. 71-1 at ¶¶ 92-95)—the Court is obliged to

consider potential federal preemption issues.

The FDCPA contains its own attorney's fees provision, which states in relevant

part: "On a finding by the court that an action under this section was brought in bad faith

and for the purpose of harassment, the court may award to the defendant attorney's

fees reasonable in relation to the work expended and costs."  15 U.S.C. § 1629k(a)(3).

The Court's review of pertinent case law has revealed no clear Tenth Circuit or

Colorado state court authority expressly finding that the FDCPA's fees provision

preempts section 13-17-201.  However, the Court finds the Colorado Supreme Court's

reasons for finding the attorney's fees provision governing § 1983 cases, 42 U.S.C. §

---

[7] Massey appears to have inappropriately raised certain arguments in opposition to
Defendants' Motion via his post-judgment "Demand[s] for Trial by Jury," rather than in his brief
in response to the Motion.  (*See* ECF Nos. 168, 176.)  The Court denied each of Massey's jury
demands as moot (ECF Nos. 169, 183) but observes in any case that he argued against an
award of fees under C.R.S. section 13-17-*102,* which is not at issue here.

1988, preempts section 13-17-201 to be persuasive here.  *See State v. Golden's Concrete Co.,* 962 P.2d 919 (Colo. 1998).

Similar to the FDCPA, the Supreme Cout has interpreted 42 U.S.C. § 1988 to permit a prevailing defendant in a section 1983 suit to recover attorney fees only when the plaintiff's suit "was vexatious, frivolous, or was brought to harass or embarrass the defendant."  *Hensley v. Eckerhart,* 461 U.S. 424, 429 n.2 (1983) (citation omitted).  The Colorado Supreme Court thus reasoned "[s]ince section 13-17-201 mandates the award of attorney fees to a prevailing defendant, while 42 U.S.C. § 1988 permits an award of attorney fees to a prevailing defendant in limited circumstances, the Colorado statute conflicts with federal law."  *Golden's Concrete,* 962 P.2d at 926.  As a result, the Colorado Supreme Court held "that 42 U.S.C. § 1988 preempts the operation of section 13-17-201 as to the section 1983 claim," and "the award of attorney fees to a prevailing defendant in a section 1983 claim brought in Colorado courts is governed by the federal standards contained in 42 U.S.C. § 1988"—not section 13-17-201.  *Id.*

Section 1629k(a)(3) similarly requires a defendant to not only show that it is a prevailing party but also that the FDCPA claim against it was brought in bad faith and for the purpose of harassment.  *I.e.,* like § 1988, § 1629k(a)(3) requires a prevailing defendant to show something more than section 13-17-201 before it can be entitled to a fee award.  Accordingly, the Court concludes that the FDCPA's fees provision preempts section 13-17-201.  And since Defendants have not sought to recover fees in accordance with § 1629k(a)(3), they may not recover fees as to Massey's FDCPA claim at all.[8]

---

[8] The Court acknowledges that Defendants have moved, as an alternative to section 13-17-201, for a fee award pursuant to the Court's inherent authority to sanction litigants who act

Nonetheless, "[p]reemption of [section] 13-17-201 is claim-specific." *Snyder v. Acord Corp.,* 811 F. App'x 447, 464 n.3 (10th Cir. 2020).  Accordingly, Defendants are still entitled to an award of fees for defending against the state-law claims, but fees "need to be apportioned."  *Id.*  As discussed above, Massey's FDCPA claim was one of seven asserted in his SAC.  Thus, before proceeding to the lodestar analysis, the Court will reduce Defendants' total requested fees ($110,994.50, excluding fees incurred related to Massey's appeal) by one-seventh, or to $95,138.14.  (ECF No. 180-1 at ¶¶ 5, 12.)

   2.   Amount

   The method for calculating reasonable fees under section 13-17-201 is "the familiar 'lodestar' method."  *Wright v. Bd. of Cnty. Commissioners of Pitkin Cnty.,* 2024 WL 4201889, at *5 (D. Colo. Aug. 30, 2024) (citing *Snyder,* 811 F. App'x at 464–65), *report and recommendation adopted* 1:22-cv-00077-GPG-TPO [ECF No. 151].  The Court "determine[s] what fee is reasonable by first calculating the lodestar—the total

_____

"in bad faith, vexatiously, wantonly, and for oppressive reasons," which is a substantially similar standard as the FDCPA's fees provision.  *Chambers v. NASCO, Inc.,* 501 U.S. 32, 45–46 (1991).  Indeed, the Supreme Court has stated the FDCPA "is best read as codifying a court's pre-existing authority to award both attorney's fees and costs" "based on a litigant's bad faith."  *Marx v. Gen. Rev. Corp.,* 568 U.S. 371, 382 (2013) (holding courts may award *costs* to prevailing defendants in FDCPA cases without finding the action was brought in bad faith and for the purpose of harassment under Rule 54(d)(1)).  Defendants' arguments as to why Massey's conduct satisfies the bad-faith requirement are well taken.  But, the Tenth Circuit has instructed that courts should also consider the plaintiff's ability to pay before imposing punitive sanctions.  *See United States v. Akers,* 76 F. 4th 982, 992–93 (10th Cir. 2023) (remanding award of punitive sanctions to district court to reconsider amount in view of Circuit's "substantial doubt whether [plaintiff's] indigent status and advanced age render him unlikely to ever pay even a fraction of the sanctions imposed").  Despite Massey's "undesirable behavior" (*id.*), it is not lost on this Court that this dispute arises, at its core, from Massey's fear of SLS foreclosing on his home.  Moreover, assuming his allegations to be true, Massey represents himself to be "an elderly, impecunious, 100% disabled military Veteran."  (ECF No. 71-1 at ¶ 22.)  Given the substantial statutory fee award Defendants are ultimately bound to receive in accordance with this Order, the Court finds it inequitable to tack on still additional fees pursuant to its inherent authority.  It thus declines to do so.

number of hours reasonably expended multiplied by a reasonable hourly rate—and then adjust the lodestar upward or downward to account for the particularities of the suit and its outcome." *Snyder,* 811 F. App'x at 464–65.  It is the movant's burden to show that the hours and rates requested are reasonable. *See, e.g., United Phosphorous, Ltd. v. Midland Fumigant, Inc.,* 205 F.3d 1219, 1233 (10th Cir. 2000).  The Court "need not identify and justify every hour allowed or disallowed." *Malloy v. Monahan,* 73 F.3d 1012, 1018 (10th Cir. 1996).

A "reasonable rate" is defined as the prevailing market rate in the relevant community for an attorney of similar experience. *Guides, Ltd. v. Yarmouth Grp. Prop. Mgmt., Inc.,* 295 F.3d 1065, 1078 (10th Cir. 2002).  Defendants have provided documentation demonstrating that they billed at rates ranging from $220 to $255 per hour for associate work performed at the associate level, and $235 to $345 per hour for worked performed at the partner level.  (ECF No. 163-1 at 116; ECF No. 180-1 at 24.) Defendants argue these rates are reasonable, particularly given that this Court has repeatedly found up to a $400 hourly rate is reasonable in this District.  (ECF No. 163 at 12 (citing *Parra v. Accurate Precision, LLC,* 2022 WL 4098995, at *1 (D. Colo. Aug. 22, 2022) (finding $400 hourly rate reasonable in this jurisdiction); *Edwards v. Edwards,* 2021 WL 130690, at *2 (D. Colo. Jan. 14, 2021) (same); *BMO Harris Bank v. Marjanovic,* 2021 WL 1293275, at *2 (D. Colo. Apr. 7, 2021) (finding $395/hour for a principal attorney and $325/hour for an associate attorney reasonable and consistent with market rates "for federal litigation in the District of Colorado")).)  The Court agrees.

Next, considering whether the total amount of hours billed to a particular matter is reasonable, "[m]ovants must demonstrate that their counsel used 'billing judgment' in

winnowing down the hours actually spent to those reasonably expended." *Electro-Mechanical Prods., Inc.,* 2024 WL 1141484, at \*4 (D. Colo. Mar. 15, 2024) (citing *Praseuth v. Rubbermaid, Inc.,* 406 F.3d 1245, 1257 (10th Cir. 2005)). Factors to consider include (1) whether the tasks being billed would normally be billed to a paying client, (2) the number of hours spent on each task, (3) the complexity of the case, (4) the number of reasonable strategies pursued, (5) the responses necessitated by maneuvering of the other side, and (6) potential duplication of services by multiple lawyers. *Ramos v. Lamm,* 713 F.2d 546, 554 (10th Cir. 1983), *overruled on other grounds Penn. v. Del. Valley Citizens' Council for Clean Air,* 483 U.S. 711, 725 (1987).

By the Court's accounting, Defendants have spent roughly 400 hours in attorney time on this matter, excluding time incurred defending against Massey's appeal. (*See* ECF No. 163 at 13; ECF No. 163-1 at 116; ECF No. 180-1 at 24.) Defendants submit this is reasonable in view of:

> (1) the substantial damages sought by Plaintiff ("not less than $5,000,000.00 against each individual defendant") [ECF No. 1 at 43]; (2) the significant work that has been required to successfully defend this matter and to address Plaintiff's several 10-or-more-count complaints, as well as his myriad motions and other filings during the 36-plus-month pendency of this case, which currently has over 160 docket entries; and (3) the complexity of the numerous legal issues involved.

(ECF No. 163 at 13; *see also* ECF No. 163-1 at ¶ 20.) Here, again, Massey has not advanced any argument as to why the amount of fees sought by Defendants is unreasonable or should be reduced. *See Snyder,* 811 F. App'x at 465; *Wright,* 2024 WL 4201889, at \*5.

Nonetheless, 400 hours of total attorney time spent on a roughly 180 docket-entry matter strikes the Court as slightly higher than it would expect. *Cf. Wright,* 2024

WL 4201889, at *5 (in a roughly 150 docket-entry matter, court could not say

expenditure of roughly 150 hours on briefing motion to dismiss amended complaint,

motion to stay, motion to dismiss second amended complaint, participating in oral

argument on motion to dismiss, drafting motion for attorney fees, and "myriad of . . .

other routine matters" was "patently unreasonable").  There can be little dispute that

Massey has proliferated the briefing required in this case.  But the Court is nonetheless

wary that a modest amount of Defendants' time billed was redundant or incurred

unnecessarily, including, for example, multiple entries reflecting time spent to "assess"

or "review the status of the litigation."  For that reason, the Court will apply an overall

10% reduction to the final dollar amount requested.  *Cf. MacIntyre v. JP Morgan Chase*

*Bank, N.A.,* 2019 WL 5084091, at *5 (D. Colo. Oct. 10, 2019) (applying general

reduction of 25% after finding some time unreasonably spent).

        In consideration of the above, the Court finds the lodestar amount to which

Defendants are ultimately entitled under section 13-17-201 is $85,624.33.  While a

substantial amount, it is entirely the product of Massey's own conduct.  As another court

in this District once summarized it in a similar case:

> The Court is somewhat sympathetic to [Plaintiff], though her
> current predicament is of her own making.  In a prior
> proceeding in state court, [Defendant] foreclosed on her
> house.  Since then, [Plaintiff] has traversed through different
> cases and courts seeking to undo that out-come.  Such was
> her purpose here.  But despite [Defendant]'s warnings to her,
> through conferral and motion practice, of the inefficacy of her
> claims in this Court, she continued.  As [Defendant]
> maintained, the Court had no authority, under these
> circumstances, to undo the state proceeding or its outcome.
> And because, as explained below, [Plaintiff's] legal
> contentions in response to the present motion are meritless,
> this case, rather than help her cause, will cause her
> additional financial hardship.

*MacIntyre,* 2019 WL 5084091, at *2.  This, too, is Massey's predicament.

**C.    Filing Restrictions**

Finally, Defendants ask this Court to enjoin Massey from filing additional lawsuits against them without prior leave and approval.  (ECF No. 163 at 13-14.)

"Federal courts have the inherent power to regulate the activities of abusive litigants by imposing carefully tailored restrictions in appropriate circumstances." *Andrews v. Heaton,* 483 F.3d 1070, 1077 (10th Cir. 2007).  "Specifically, injunctions restricting further filings are appropriate where the litigant's lengthy and abusive history is set forth; the court provides guidelines as to what the litigant may do to obtain its permission to file an action; and the litigant receives notice and an opportunity to oppose the court's order before it is implemented."  *Id.*

Although this lawsuit represents Massey's first involving the instant subject matter in the District of Colorado, it appears by all accounts that Massey is intent on re-filing the same lawsuit in different forums until a court is willing to find his claims are not barred by res judicata, as outlined at length in Section I *supra.*  The Court finds a narrowly tailored restriction enjoining Massey from filing any further *pro se* lawsuits in the District of Colorado against Defendants related to the same subject matter as this lawsuit is appropriate.  *See Sieverding v. Colo. Bar Ass'n,* 469 F.3d 1340, 1345 (10th Cir. 2006).  In addition, given Massey's propensity to continue filing frivolous documents in this action seeking to undo the Court's judgment, as similarly detailed in Section I *supra*, the Court finds it appropriate to enjoin Massey from filing further *pro se* documents in this case without leave of Court.  The Tenth Circuit has approved similar restrictions to the above as a first response to abusive filings.  *Andrews,* 483 F.3d at

1077; *Sieverding,* 469 F.3d at 1345; *Van Sickle v. Holloway,* 791 F.2d 1431, 1437 (10th Cir. 1986).

Massey may seek permission to file new actions or documents that would otherwise be prohibited by the above restrictions in accordance with the procedures set forth in detail in the Conclusion of this Order.  *See* Section V *infra; cf. Harper v. Montezuma Bd. of Cnty. Commissioners,* 2018 WL 10502055, at *2 (D. Colo. Dec. 27, 2018) (imposing similar procedures).

**D.    Massey's Request for Evidentiary Hearing**

Finally, Massey's response includes a passing request that, "should it be the [C]ourt's decision to grant defendants' legally defective, unpersuasive motion, [P]laintiff respectfully moves that the [C]ourt set the matter for evidentiary hearing."  (ECF No. 165 at 1.)  Even setting aside the procedural impropriety of this "motion" (*see* D.C.COLO.LCivR 7.1(d)), the determination of whether Defendants are entitled to a mandatory fee award under section 13-17-201 does not necessitate an evidentiary hearing.  *See Shell v. Henderson,* 2013 WL 4838907, at *2 (D. Colo. Sept. 10, 2013) (reasoning because an award of fees under section 13-17-201 is mandatory, "it is entirely unclear what 'evidence' [plaintiff] believes she could have put on at a hearing"); *Hutchinson v. Beckworth,* 474 F. App'x 736, 740 (10th Cir. 2012) (evidentiary hearing on a fee motion is necessary only "when *factual disputes exist* in connection with a request for attorney fees and costs and those disputes cannot be resolved without a hearing").  And, as to the Court's imposition of filing restrictions, Massey has demonstrated he is "perfectly capable of reducing his objections to writing."  *Tripati v. Beaman,* 878 F.2d 351, 354 (10th Cir. 1989) ("[Plaintiff] is entitled to notice and an opportunity to oppose the court's order before it is instituted. . . . The notice and

opportunity requirement does not, however, require an in-person hearing in the district court."). As such, no evidentiary hearing will be set.

## III. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1.    Massey's Objection (ECF No. 175) is OVERRULED;

2.    Defendants' Motion (ECF No. 163) is GRANTED in part as set forth above;

3.    Defendants are awarded **$85,624.33** in attorneys' fees reasonably incurred in defending this action; and

4.    Massey is DIRECTED to pay **$85,624.33** in attorneys' fees directly to Defendants in the form of a check made payable to them and delivered to them directly. This payment shall be made by no later than **January 31, 2025.** If Massey has any questions concerning payment of attorneys' fees, he is DIRECTED to contact the Clerk of Court.

5.    Unless he first obtains leave as provided for below, James Harrison Massey is ENJOINED from commencing any *pro se* litigation in the United States District Court for the District of Colorado against Computershare Limited, Computershare U.S., Inc., Specialized Loan Servicing LLC, and/or Computershare Loan Services, in or related to the subject matter of District of Colorado case number 21-cv-0601-WJM-SBP. If Massey, proceeding *pro se*, desires to file such a lawsuit, he shall file a petition with the Clerk of Court requesting leave to file a complaint or other pleading that includes:

    (A)    A copy of this Order;

    (B)    A copy of the proposed complaint or pleading;

(C)     A list of all other lawsuits or other matters currently pending or previously filed with this Court or any other court that involves Computershare Limited, Computershare U.S., Inc., Specialized Loan Servicing LLC, and/or Computershare Loan Services and the same or similar claims, including the name, number, and status or disposition of each listed case; and

(D)     A notarized affidavit, or declaration which fully complies with 28 U.S.C. § 1746, certifying that the claims have not been previously asserted and/or do not involve issues previously litigated and resolved, and the claims are not frivolous, malicious, or made in bad faith.

Massey shall mail or otherwise deliver his submissions to the Clerk of Court, who shall forward them to a judge of this Court for determination as to whether the complaint or pleading is lacking in merit, duplicative, frivolous, or malicious.  The Court will either allow the filing or issue an order of denial.  Failure to follow these procedures will result in a summary rejection of any future case to which this restriction applies.

6.      Further, unless he first obtains leave as provided for below, James Harrison Massey is additionally ENJOINED from filing any further post-judgment documents in this action, case number 21-cv-0601-WJM-SBP.  If Massey desires to file any further *pro se* documents in this case, he shall file a motion for leave with this Court that includes:

(A)     A copy of the proposed document; and

(B)    A notarized affidavit, or declaration which fully complies with 28

U.S.C. § 1746, certifying that the document is not duplicative of a

document already filed and/or does not involve issues already

resolved by the Court, and is not frivolous, malicious, or made in

bad faith.

Given his status as a *pro se* e-filer, Massey may continue to file such motions for

leave directly with the Court via CM/ECF.  Failure to follow these procedures will

result in a summary rejection of any future filings to which this restriction applies.

Dated this 8th day of November, 2024.

BY THE COURT:

William J. Martinez
Senior United States District Judge